[Cite as *Siliko v. Miami Univ.*, 2022-Ohio-4133.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| JENNIFER SILIKO, et al., | : | |
| Appellants, | : | CASE NO. CA2021-12-162 |
| | : | O P I N I O N |
| - vs - | | 11/21/2022 |
| | : | |
| MIAMI UNIVERSITY, et al., | : | |
| Appellees. | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2021 10 1467

Mendenhall Law Group, and Thomas W. Connors and Warner Mendenhall, for appellants.

Jackson Lewis P.C., and Patricia Anderson Pryor and Adair M. Smith, for appellees.

**HENDRICKSON, J.**

{¶1} Appellants, Jennifer Siliko, Ronald Siliko, and Judy Vest, appeal from a decision of the Butler County Court of Common Pleas dismissing their complaint seeking declaratory and injunctive relief against appellees, Miami University and David H. Budig, Sandra D. Collins, Rod Robinson, John C. Pascoe, Zachary Haines, Mary Shell, and Deborah Feldman in their official capacity as members of the board of trustees of Miami University (collectively, "Miami University") regarding a COVID-19 vaccination policy

implemented on August 31, 2021. The trial court dismissed appellants' complaint after finding that they lacked standing to challenge Miami University's vaccination policy as, at the time of filing the complaint, they either had obtained an exemption to the vaccine requirement or had failed to request an exemption despite exemptions being offered for medical reasons, sincerely held religious beliefs, or reasons of conscience. We agree that appellants have not established standing to bring their claims that Miami University's COVID-19 vaccination policy violates Article I, Section I of the Ohio Constitution, R.C. 2905.12, 3709.212, or 3792.04(B)(1) and find dismissal of those claims proper. However, as appellants have sufficiently alleged facts establishing standing to bring a discrimination claim under R.C. 3792.04(B)(2), we find dismissal of this claim improper and reverse the trial court's judgment to this extent.

## I. FACTS AND PROCEDURAL HISTORY

{¶2} On August 31, 2021, Miami University implemented the "COVID-19 Vaccination Program and Policy," for all students and employees who had "any on-campus presence on any Miami University owned or controlled property." The vaccination policy provided that "[u]nless exempted * * * all employees and students must be fully vaccinated by November 22, 2021. Requests for exemption must be submitted by October 15, 2021. Faculty, staff and students must receive at least their first COVID-19 vaccine dose by October 25, 2021." The policy further provided that "[e]xemptions may be granted for medical reasons, sincerely held religious beliefs or reasons of conscience (philosophical or ethical reason) and a deferral granted for pregnancy or nursing. * * * Individuals with an approved exemption shall be required to comply with COVID-19 testing and other educational and preventative health and safety measures." Students who had not been fully vaccinated or received an exemption or deferral would not be permitted to attend in-person classes, events, or access campus facilities, including housing, after January 1,

2022. As for employees, the policy provided that "[e]mployees who choose not to be vaccinated and who do not receive an approved exemption will face disciplinary action."

{¶3} On October 4, 2021, Jennifer Siliko, an employee of Miami University, filed a complaint for declaratory and injunctive relief against the university and its board of trustees seeking an injunction against enforcement of the vaccination policy. Jennifer Siliko also sought declaratory judgment that the vaccine policy violated her constitutional right to refuse medical treatment in violation of Article I, Section I of the Ohio Constitution, violated R.C. 2905.12 by coercing her, by means of taking or withholding official action, to accept medical treatment which she has the legal freedom to refuse under the Ohio Constitution, and violated R.C. 3792.04 by requiring her to receive a vaccine for which the United States Food and Drug Administration (FDA) had not granted full approval and by discriminating against her by requiring her to "engage in activities and precautions different from those of individuals who have received non-FDA approved vaccines."

{¶4} On October 14, 2021, an amended complaint for declaratory and injunctive relief was filed which added Ronald Siliko and Judy Vest, also employees of Miami University, as plaintiffs. The amended complaint again set forth claims that the vaccination policy violated Article I, Section I of the Ohio Constitution, R.C. 2905.12, and R.C. 3792.04. With respect to the claim under R.C. 3792.04, appellants included the following allegations as to how the vaccination policy discriminated against them:

> 31. Defendants' religious exemption form requires all those who apply for exemption to agree to release defendants from certain liabilities and to agree to comply with testing and preventative measures, including masking. The release provision unlawfully limits plaintiffs' right to a religious exemption. To the extent that the preventative measures provision treats plaintiffs differently than those vaccinated with vaccines that are not FDA-approved, it discriminates in violations [sic] of R.C. 3792.04.

32. On or about October 4, 2021, defendants announced a bonus program available only to their employees who have taken Covid-19 vaccines, including taking the first dose by October 25, 2021. This treats plaintiffs differently than employees of defendants who have taken vaccines that are not FDA-approved, and therefore the [vaccine policy] violates R.C. 3792.04.

The amended complaint also added a fourth claim asserting that Miami University lacked statutory authority to implement the vaccine policy based on R.C. 3709.212, which limited the authority of health boards to issue orders or regulations for the prevention or restriction of disease only to those diagnosed with the disease, those who have come in direct contact with someone medically diagnosed with the disease, or those who have had a documented incident in the building of the disease. Attached to appellants' amended complaint was a copy of Miami University's COVID-19 vaccination policy. Notably, however, copies of the exemption request form and the bonus program were not attached to the amended complaint.

{¶5} A few days after filing their amended complaint, appellants moved for a temporary restraining order ("TRO") and preliminary injunction to preclude Miami University from enforcing the vaccination policy. A hearing on the request for a TRO was held on October 20, 2021. At the hearing, Miami University argued appellants could not meet the burden for a TRO and, for the first time, raised the issue of standing. Miami University argued that none of the appellants had standing as they "don't have any harm to them because they have the right and ability to ask for an exemption. Two of them have and they have [the] exemption. One has chosen not to. * * * [Case law has] held that if you didn't ask for the exemption or you already got the exemption, you don't have a standing to bring a claim, and that would apply here as well." Appellants' counsel informed the trial court of appellants' status, explaining that as of the filing of the amended complaint Ronald Siliko and Judy Vest had applied for and received COVID-19 vaccine exemptions but Jennifer

- 4 -

Siliko had not applied for the exemption.

{¶6} At the conclusion of the hearing, the trial court denied appellants' request for a TRO upon finding that there was not any irreparable harm caused by implementation of the vaccination policy. The trial court did not address the standing argument raised by Miami University.

{¶7} On October 27, 2021, Miami University filed a memorandum in opposition to appellants' request for a preliminary injunction. In addition to arguing that appellants could not meet the standard for the issuance of a preliminary injunction, it argued that the "[a]mended [c]omplaint does not set forth sufficient facts to establish standing or a justiciable controversy. [Appellants] fail to assert whether they have requested an exemption, and what harm they have or will suffer." Attached to the memorandum in opposition was the affidavit of Dawn Fahner, the Associate Vice President for Miami University. Fahner described the university's COVID-19 vaccination policy, stating "[e]mployees are required to be vaccinated unless they request and are approved for an exemption, which we are currently allowing for medical reasons, sincerely held religious beliefs, and reasons of conscience, or a deferral due to pregnancy or nursing." Fahner attested that "[c]urrently, our employee safety protocols, including masking and testing, do not distinguish between vaccinated and unvaccinated status." Though the vaccination policy required employees to request exemptions by October 15, 2021, Fahner stated that "[e]mployees where advised they could still submit a request for exemption until October 25, 2021." She advised that Ronald Siliko and Judy Vest had both "timely requested and received an exemption" to the vaccination policy and though "Jennifer Siliko initially did not request an exemption * * * she subsequently requested an exemption on October 21, 2021, which has now been granted."

{¶8} Appellants filed a reply memorandum in support of their motion for preliminary

- 5 -

injunction in which they argued they had standing to pursue their claims. Appellants admitted that Ronald Siliko and Judy Vest "had applied for and received religious exemptions prior to the filing of th[e] case" and that Jennifer Siliko had been granted an exemption to the vaccine requirement after the TRO hearing, despite her "refusal to agree to the exemptions' required conditions." Appellants contended, however, that despite being granted exemptions, they still suffer an injury from Miami University's vaccination policy. They argued "[c]onstitutional violations are the injury, and they include the efforts by [Miami University] to chill or impermissibly burden [appellants'] constitutional rights." As evidence that they are injured by the university's vaccination policy, even with received exemptions, appellants submitted unsworn and uncertified copies of Miami University's non-medical exemption form, entitled "Faculty and Unclassified Staff Request for Non-Medical Exemption from COVID-19 Vaccination," and an "Exemption Process and FAQs" document that explained the exemption process and answered frequently asked questions.

{¶9} On November 30, 2021, Miami University filed a motion to dismiss appellants' amended complaint pursuant to Civ.R. 12(B)(6), arguing the amended complaint failed to state a claim upon which relief could be granted. Miami University argued that appellants did not have standing to bring their claims and, even if they did, their amended complaint did not set forth sufficient facts to assert a cause of action for a violation of R.C. 2905.12, 3792.04, 3709.212, or Article I, Section I of the Ohio Constitution. Miami University contended appellants failed to allege facts demonstrating that they were injured by the university's vaccination policy. It further contended, with respect to appellants' R.C. 3709.212 claim, that the plain language of the statute limited its applicability to boards of public health and that it did not have any application to a university or its board of trustees. With respect to appellants' R.C. 2905.12 claim, Miami University argued that under Ohio law, a claim of coercion under the statute is not a cognizable civil cause of action. As for

appellants' claim that the vaccination policy violates R.C. 3792.04 and Article I, Section I of the Ohio Constitution, Miami University argued that the vaccination policy is not a mandate that requires employees to receive a non-FDA approved drug or a policy that denies them the right to decline medical treatment. Rather, under the express terms of the vaccination policy, employees can exempt out of receiving the vaccine for medical reasons, sincerely held religious beliefs, or reasons of conscience.

{¶10} Appellants filed a memorandum in opposition to Miami University's motion to dismiss. On December 6, 2021, the trial court issued a decision granting Miami University's motion to dismiss upon finding that appellants lacked standing to challenge the vaccination policy as "[n]one of the [appellants] in this case are being forced to receive a COVID-19 vaccination." The court noted that at the time the amended complaint had been filed, Ronald Siliko and Judy Vest had applied for and received an exemption to the vaccine requirement. The court found that "as unvaccinated employees Ronald Siliko and Judy Vest are subject to the same testing and safety measures as vaccinated employees. They are not subject to any additional requirements * * * [and] have not established an injury." As for Jennifer Siliko, the court noted that at the time of filing the amended complaint, Jennifer Siliko had not requested an exemption. "By failing to request an exemption Jennifer Siliko cannot show she is injured by the policy exemptions."

## II. ANALYSIS

{¶11} Appellants appealed the dismissal of their complaint for lack of standing, raising the following as their sole assignment of error:

{¶12} THE TRIAL COURT ERRED IN DISMISSING PLAINTIFFS' FIRST AMENDED COMPLAINT FOR FAILURE TO STATE FACTS ESTABLISHING STANDING, SINCE THERE IS A SET OF FACTS CONSISTENT WITH THE COMPLAINT WHICH WOULD ESTABLISH SUCH STANDING.

{¶13} Appellants argue that the trial court erred by dismissing their complaint for lack of standing as "at least one of the plaintiffs plead[ed] facts sufficient to establish standing to bring any of the claims in the complaint."

## A. Standard of Review

{¶14} "Whether a party has established standing to bring an action before the court is a question of law, which we review de novo." *Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, ¶ 20. *See also Honeywell Internatl., Inc. v. Vanderlande Industries, Inc.*, 12th Dist. Warren No. CA2021-12-114, 2022-Ohio-2986, ¶ 6. Likewise, a trial court's order granting a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim is subject to de novo appellate review. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, ¶ 5.

{¶15} "In construing a complaint upon a motion to dismiss for failure to state a claim, we must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party." *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988). As long as there is a set of facts, consistent with the plaintiffs' complaint, that would allow them the relief sought, a court may not grant the defendants' motion to dismiss. *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 145 (1991). With regards to standing, though "the court must presume that all the *factual* allegations in the complaint are true * * * 'legal conclusions, even when cast as factual assertions, are not presumed true for purposes of a motion to dismiss.'" (Emphasis sic.) *State ex rel. Ames v. Portage Cty. Bd. of Revision*, 166 Ohio St.3d 255, 2021-Ohio-Ohio-4486, ¶ 13, quoting *State ex rel. Martre v. Reed*, 161 Ohio St.3d 281, 2020-Ohio-4777, ¶ 12.

## B. General Principles of Standing

{¶16} Standing is a "jurisdictional requirement" and, before an Ohio court can consider the merits of a legal claim, the person or entity seeking relief must establish standing to sue. *Ohioans for Concealed Carry, Inc. v. Columbus*, 164 Ohio St.3d 291, 2020-

Ohio-6724, ¶ 12 and 42. "Standing is defined at its most basic as '[a] party's right to make a legal claim or seek judicial enforcement of a duty or right.'" *Ohio Pyro, Inc. v. Ohio Dept. of Commerce,* 115 Ohio St.3d 375, 2007-Ohio-5024, ¶ 27, quoting *Black's Law Dictionary* 1442 (8th Ed.2004). "Standing does not turn on the merits of the plaintiffs' claims but rather on 'whether the plaintiffs have alleged such a personal stake in the outcome of the controversy that they are entitled to have a court hear their case.'" *Ohioans for Concealed Carry* at ¶ 12, quoting *ProgressOhio.org, Inc. v. JobsOhio*, 139 Ohio St.3d 520, 2014-Ohio-2382, ¶ 7.

{¶17} "'[S]tanding is to be determined as of the commencement of the suit.'" *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, ¶ 24, quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570-571, 112 S.Ct. 2130, fn. 5 (1992). "'While the proof required to establish standing increases as the suit proceeds, * * * the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed.'" *Ohioans for Concealed Carry* at ¶ 35, fn. 3, quoting *Davis v. Fed. Election Comm.*, 554 U.S. 724, 734, 128 S.Ct. 2759 (2008). "Standing 'is not dispensed in gross,' it must be demonstrated for each claim and each form of relief." *Id.* at ¶ 13, quoting *Preterm-Cleveland, Inc. v. Kasich*, 153 Ohio St.3d 157, 2018-Ohio-441, ¶ 30. However, for purposes of jurisdiction, only one plaintiff must have standing for the claims of the remaining plaintiffs to be heard and the court to proceed to decide the case on the merits. *Beaver Excavating Co. v. Testa*, 134 Ohio St.3d 565, 2012-Ohio-5776, ¶ 16. Here, appellants claim to have standing to bring their claims under traditional common-law standing principles and under the Declaratory Judgment Act.

1. Common-Law Standing

{¶18} "[C]ommon-law standing requires the litigant to demonstrate that he or she has suffered (1) an injury, (2) that is fairly traceable to the defendant's allegedly unlawful

conduct and (3) is likely to be redressed by the requested relief." *Ohioans for Concealed Carry* at ¶ 12, citing *Moore*, 2012-Ohio-3897 at ¶ 22. "These three factors—injury, causation, and redressability—constitute the 'irreducible constitutional minimum of standing.'" *Moore* at ¶ 22, quoting *Lujan* at 560. Though "threatened injuries, including threatened discrimination may serve as an 'injury' for common-law standing purposes * * * [the] threatened injury cannot be so remote as to be 'merely speculative.'" *Hamilton v. Ohio Dept. of Health*, 10th Dist. Franklin No. 14AP-1035, 2015-Ohio-4041, ¶ 19, quoting *Wurdlow v. Turvy*, 10th Dist. Franklin No. 12AP-25, 2012-Ohio-4378, ¶ 15. Further, "[a]n injury that is borne by the population in general, and which does not affect the plaintiff in particular, is not sufficient to confer standing." *State ex rel. Food & Water Watch v. State*, 10th Dist. Franklin No. 14-AP-958, 2016-Ohio-3135, ¶ 59. Standing requires a "concrete injury in fact, rather than an abstract or suspected injury." *State ex rel. Consumers League of Ohio v. Ratchford*, 8 Ohio App.3d 420, 424 (10th Dist.1982). *See also Ohio Contrs. Assn. v. Bicking*, 71 Ohio St.3d 318, 320 (1994).

### 2. Standing Under the Declaratory Judgment Act

**{¶19}** "In addition to standing authorized by common law, standing may also be conferred by statute." *ProgressOhio.org*, 2014-Ohio-2382 at ¶ 17. To that end, appellants have argued that they have standing under R.C. 2721.03, the Declaratory Judgment Act, to seek a declaration that the university's vaccination policy is unlawful. R.C. 2721.03 states, in pertinent part, the following:

> Subject to division (B) of section 2721.02 of the Revised Code, any person interested under a deed, will, written contract, or other writing constituting a contract or any person whose rights, status, or other legal relations are affected by a constitutional provision, statute, rule as defined in section 119.01 of the Revised Code, municipal ordinance, township resolution, contract, or franchise may have determined any question of construction or validity arising under the instrument, constitutional provision, statute, rule, ordinance, resolution,

contract, or franchise and obtain a declaration of rights, status, or other legal relations under it.

"The three prerequisites to declaratory relief include '(1) a real controversy between the parties, (2) justiciability, and (3) the necessity of speedy relief to preserve the parties' rights.'" *Ohioans for Concealed Carry* at ¶ 30, quoting *ProgressOhio.org* at ¶ 19.

{¶20} Appellants argue they have standing under R.C. 2721.03 and, therefore, do not need to show that they have been injured or have suffered any particularized harm to bring their claims. They contend that they are not required to "assert an actual injury beyond the violation of [their] personal legal rights" – that is, their legal right to refuse medical treatment. However, as the Ohio Supreme Court recently explained, "[a]lthough a declaratory-judgment action generally contemplates that the action is brought before an injury-in-fact has occurred, a plaintiff must nonetheless demonstrate 'actual present harm or a significant possibility of future harm to justify preenforcement relief.'" *Ohioans for Concealed Carry* at ¶ 32, quoting *Peoples Rights Org., Inc. v. Columbus*, 152 F.3d 522, 527 (6th Cir.1998). "Certain impending injury is sufficient to obtain preventative relief; a plaintiff need not wait for an injury to actually occur." *Id.* However, "an 'idealistic opposition to a challenged law is insufficient to establish standing under the Declaratory Judgment Act.'" *Id.* at ¶ 36, quoting *ProgressOhio.org* at ¶ 19.

{¶21} With the foregoing principles in mind, we turn to the claims set forth in appellants' amended complaint.

### C. Appellants' Claims

1. Constitutional Claim under Article I, Section I

{¶22} Appellants allege that Miami University's vaccination policy violates their constitutional right to refuse medical treatment pursuant to Article I, Section I of the Ohio Constitution. This provision provides that "[a]ll men are, by nature, free and independent,

and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety."

{¶23} The Ohio Supreme Court has recognized an Ohioan's fundamental right to refuse medical treatment on the basis that "personal security, bodily integrity, and autonomy are cherished liberties." *Steele v. Hamilton Cty. Community Mental Health Bd.*, 90 Ohio St.3d 176, 180 (2000). "These liberties were not created by statute or case law. Rather, they are rights inherent in every individual." *Id.* at 180-181, citing Section I, Article I, Ohio Constitution. The court further recognized that "'every human being of adult years and sound mind has a right to determine what shall be done with his own body.'" *Id.* at 181, quoting *Schloendorff v. Soc. of N.Y. Hosp.*, 211 N.Y. 125, 129 (1914).

{¶24} Looking at the amended complaint, we find that appellants have failed to set forth facts demonstrating standing under traditional common-law principles or under the Declaratory Judgment Act. Appellants' complaint alleges that Miami University's vaccination policy requires its employees "who are not exempted, [to] take a first Covid-19 vaccine dose by October 25, 2021 and be fully vaccinated by November 22, 2021. * * * Employees who do not meet these requirements will face disciplinary action."

{¶25} By its express terms, Miami University's vaccination policy allows employees to obtain exemptions for medical reasons, for sincerely held beliefs, or for reasons of conscience (philosophical or ethical reasons). The amended complaint does not contain any allegations as to appellants' exemption status. The complaint does not indicate whether appellants applied for and received an exemption, applied for and were denied an exemption, had an open application for an exemption, or had refused to apply for an

exemption from Miami University's vaccination policy.[1] To obtain this information, this court, like the trial court, must rely on information obtained from outside the face of the amended complaint.

{¶26} Normally, when considering a motion to dismiss under Civ.R. 12(B)(6), a court is limited to the allegations set forth in the complaint. "When a Civ.R. 12(B)(6) motion depends on extrinsic evidence, the 'proper procedure is for the court to convert the motion to dismiss into a motion for summary judgment and provide the opposing party with notice and an opportunity to respond.'" *State ex rel. Evans v. Mohr*, 155 Ohio St.3d 579, 2018-Ohio-5089, ¶ 5, quoting *Jefferson v. Bunting*, 140 Ohio St.3d 62, 2014-Ohio-3074, ¶ 12. However, where a party repeatedly admits to facts in their written filings and when appearing before the court, we find it appropriate for the court to rely on such admissions in ruling on a Civ.R. 12(B)(6) motion to dismiss for lack of standing.[2]

{¶27} At the TRO hearing, in their memorandum in support of their motion for preliminary injunction, in their memorandum in opposition to Miami University's motion to dismiss, and during appellate oral arguments, appellants, through counsel, represented that at the time of filing the amended complaint, two of the plaintiffs (Ronald Siliko and Judy Vest) had sought and obtained exemptions to the vaccination policy. As for the third plaintiff, Jennifer Siliko, she had not applied for an exemption as of the filing of the complaint or amended complaint. After the October 20, 2021 TRO hearing, Jennifer Siliko applied for and received a religious exemption, despite her "refusal to agree to the exemptions'

---

1. Other than specifying appellants' ages, their addresses, their status as employees of Miami University, and their belief that they had recovered from COVID-19 and have natural immunity, the amended complaint does not set forth any specific facts about appellants. The positions appellants hold or the job responsibilities they have at Miami University are not set forth in the amended complaint.

2. Our reliance on appellants' exemption status is limited to those facts admitted by appellants. This court will not rely on evidence submitted by Miami University. This court, therefore, will not rely on the affidavit of Fahner, as doing so is improper under the standard governing Civ.R. 12(B)(6) motions to dismiss.

required conditions." Given appellants' respective statuses at the time the complaint was filed, we find that they lacked standing to bring a claim under Article I, Section I of the Ohio Constitution. Our conclusion is guided by existing case law discussing challenges to employer- and university-implemented COVID-19 vaccination policies.

{¶28} In *Wade v. Univ. of Conn. Bd. of Trustees*, 554 F.Supp.3d 366 (D.Conn.2021), the United States District Court for the District of Connecticut considered whether two students and the parents of a third student had standing to challenge the constitutionality of a COVID-19 vaccination policy implemented by the University of Connecticut ("UConn"). UConn's vaccination policy required all students to be fully vaccinated against COVID-19 for the 2021-2022 school year and stated that the "[f]ailure to comply with the policy may result in loss of privileges and/or sanctions." *Id.* at 372. The policy allowed for exemptions "under certain circumstances," and permitted students to apply for medical or non-medical exemptions by filling out an online form. *Id.* At the time the lawsuit was filed against UConn, the two student plaintiffs had applied for non-medical exemptions under the policy, but the exemptions had not been granted. *Id.* at 373. Subsequently, these two students were granted exemptions. *Id.* The third student, represented by her parents, had not sought an exemption at the time the suit was filed. *Id.* UConn filed a motion to dismiss contending the plaintiffs lacked standing. The district court agreed, stating in relevant part the following:

> Two of the three plaintiffs have applied for and received exemptions from the UConn vaccination requirement. Having received exemptions, their claims are moot because they are unlikely to face any continuing injury form the vaccination requirement. *The third plaintiff has declined even to seek an exemption. Having failed to avail herself of a simple process that may allow her to avoid the vaccination requirement, she has not suffered an injury that the law recognizes as the basis for a right to complain in federal court.*

(Emphasis added.) *Id.* at 368.

{¶29} In *Klassen v. Trustees of Ind. Univ.*, 549 F.Supp.3d 836 (N.D.Ind.2021)

("*Klassen I*"), eight Indiana University students challenged the university's COVID-19 vaccine policy, which required all students to be fully vaccinated before returning to campus in August 2021. *Id.* at 843 and 848. The vaccine policy allowed exemptions for religious reasons and medical reasons. *Id.* at 848. Additionally, students who were enrolled in online courses, with no on-campus components, were not required to receive the vaccine. *Id.* at 849. If a student received an exemption from vaccination, the university's policy imposed additional safety requirements, such as more frequent mitigation testing, quarantining if exposed to someone who had tested positive for COVID-19, wearing a mask in public spaces, and returning to their permanent address or quarantining if there was a serious outbreak of COVID-19. *Id.* Before ruling on the merits of the plaintiffs' request for a preliminary injunction against the implementation of the vaccine policy, the district court examined whether the students had standing to bring suit. *Id.* at 857-859. The court noted that six of the student-plaintiffs had been granted exemptions, a seventh student-plaintiff qualified for an exemption if one was sought, and the eighth student-plaintiff did not qualify for an exemption. *Id.* at 858. The court found that this eighth student had standing, allowing the entire case to move forward. *Id.* However, the court ultimately denied the students' request for a preliminary injunction after finding they had not established a likelihood of success on the merits of their claims. *Id.* at 843. The case was appealed to the Seventh Circuit Court of Appeals, which noted that the eighth student who had been ineligible for an exemption had withdrawn from the university with no plans to return. *Klassen v. Trustees of Ind. Univ.*, 24 F.4th 638, 639 (7th Cir.2022) ("*Klassen II*"). The court found that the case was no longer justiciable and ordered that the district court's judgment be vacated and the matter remanded with instructions to dismiss the case as moot. *Id.* at 640.

{¶30} In *Bare v. Cardinal Health Inc.,* E.D.Tenn. No. 3:21-CV-00389-DCLC-DCP, 2022 U.S. Dist. LEXIS 40759 (Mar. 8, 2022), an employee sought to challenge the COVID-

19 vaccination policy his employer implemented. The policy required all salaried employees to receive a COVID-19 vaccine by October 4, 2021 and provided a process for employees to request a medical or religious accommodation. *Id.* at *3. Bare's initial request for a religious accommodation was denied; however, Bare's employer later granted the religious accommodation exempting him from needing to get the vaccine. *Id.* at *4. Bare nonetheless maintained suit against his employer, claiming the COVID-19 vaccine policy was discriminatory as it provided a "sham" religious accommodation process. *Id.* The employer moved to dismiss the complaint for lack of standing and the district court granted the motion, holding that "[b]ecause plaintiff has not been injured, he lacks standing." *Id.* at *2. Bare argued that despite being granted a religious accommodation exempting him from the vaccine requirement, he was nonetheless injured because his employer intended to review his religious accommodation in six months. *Id.* The district court found "[t]he purported expiration of his religious accommodation is not a sufficient injury for standing because it is unclear whether [the employer] will revoke his accommodation at that time. Moreover, Bare has not suffered any adverse employment action since requesting his accommodation." *Id.* at *3.

{¶31} Just like the plaintiffs in *Wade, Klassen I and II*, and *Bare*, appellants do not have standing due to lack of injury or a real justiciable controversy between the parties. Ronald Siliko and Judy Vest received exemptions to Miami University's COVID-19 vaccination policy before filing suit. They are not being forced to undergo medical treatment and, therefore, have not been injured by Miami University. No real controversy exists between the parties with respect to this claim.

{¶32} Jennifer Siliko, like the third student in *Wade*, had not sought an exemption to Miami University's COVID-19 vaccination policy at the time she filed suit. She therefore failed to avail herself of the process that would allow her to avoid the vaccination

requirement and has not suffered an injury that the law recognizes. *Wade*, 544 F.Supp.3d at 377 ("a plaintiff who fails to submit to the procedural requirements of a law or policy that offers an exemption or other relief from its mandate does not have standing to challenge the restrictions imposed by the law or policy").

{¶33} Furthermore, even if Jennifer Siliko had standing at the time she initiated the suit, her constitutional claim became moot when she applied for and was granted an exemption from Miami University. "If the plaintiff ceases to have standing, such that a live case or controversy no longer exists, the case becomes moot." *Barry v. Lyon*, 834 F.3d 706, 715 (6th Cir.2016). *See also Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944 (1969) ("a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome"). Because Jennifer Siliko requested and obtained an exemption to the vaccination requirement, she can no longer claim a real or expected imminent injury from the university's policy. *See Wade* at 376 ("In light of the granting of their exemption requests, [the two students] have no continuing real or expected imminent injury from UConn's vaccination requirements. In such circumstances, where a plaintiff seeks to challenge a government requirement that no longer burdens or applies to the plaintiff, a federal court lacks jurisdiction to adjudicate the plaintiff's claims").[3]

{¶34} Accordingly, for the foregoing reasons, appellants' claims under Article I, Section I were properly dismissed for lack of standing.

### 2. R.C. 2905.12 Claim

{¶35} Appellants' amended complaint sets forth a claim that Miami University

---

3. An exception to the mootness doctrine exists for cases that are capable of repetition, yet evading review. *State ex rel. Sawyer v. Cendroski*, 118 Ohio St.3d 50, 2008-Ohio-1771, ¶ 9. "This exception applies when the challenged action is too short in duration to be fully litigated before its cessation or expiration, and there is a reasonable expectation that the same complaining party will be subject to the same action again." *State ex rel. Dispatch Printing Co. v. Louden*, 91 Ohio St.3d 61, 64 (2001). We do not find this exception applicable to the case before us.

engaged in coercion in violation of R.C. 2905.12 through its implementation of the vaccination policy. R.C. 2905.12, a criminal statute, provides in relevant part that

> [n]o person, with purpose to coerce another into taking or refraining from action concerning which the other person has a legal freedom of choice, shall * * * [t]ake, withhold, or threaten to take or withhold official action, or cause or threaten to cause official action to be taken or withheld.

R.C. 2905.12(A)(5). Appellants' amended complaint alleges Miami University's COVID-19 vaccination policy "involves taking or withholding official action to coerce plaintiffs to accept medical treatment which plaintiff has the legal freedom to refuse under Section 1, Article I of the Ohio Constitution and therefore violates R.C. 2905.12."

{¶36} As noted above, appellants were not required or coerced into taking a COVID-19 vaccine. All three appellants were granted exemptions to the vaccine and therefore cannot show any injury. Though appellants claim they have standing as the university's COVID-19 vaccination policy injured them by "threaten[ing] those exempted with masking, surveillance testing, and activity limitation requirements," the amended complaint did not contain any such allegations.

{¶37} Furthermore, appellants do not have standing to bring their coercion claim as R.C. 2905.12 does not create a private right of action. "[A] claim of coercion is not a 'cognizable civil cause of action.'" *Simpson v. Voiture Nationale La Societe Des Quarante Hommes*, 2d Dist. Montgomery No. 29016, 2021-Ohio-2131, ¶ 25, quoting *Heskett v. Van Horn Title Agency, Inc.*, 10th Dist. Franklin No. 06AP-549, 2006-Ohio-6900, ¶ 26. *See also Edwards v. Madison Twp.*, 10th Dist. Franklin No. 97APE06-819, 1997 Ohio App. LEXIS 5397, *17-18 (Nov. 25, 1997). "In the absence of a specific provision to the contrary, criminal statutes generally do not create a private cause of action, but give rise only to a right of prosecution by the state." *George v. State*, 10th Dist. Franklin Nos. 10AP-4 and 10AP-97, 2010-Ohio-5262, ¶ 32.

{¶38} Appellants' reliance on *Peltz v. South Euclid*, 11 Ohio St.2d 128 (1967), in arguing that they can maintain an action for declaratory relief based on a criminal statute is misplaced. In *Peltz*, a plaintiff filed an action seeking a declaration that the city of South Euclid's ordinance that prohibited placing political signs on public and private property was unconstitutional as it violated his First Amendment rights. *Id.* at 130. Under the ordinance, violators were subject to a penalty of $500 per day. *Id.* The supreme court found that an actual controversy existed because the plaintiff was a candidate for public office, intended to place a political sign on his property, and the municipality had announced its intention to enforce the ordinance. *Id.* at 131. The court further found that "[t]he validity, construction, and application of criminal statutes and ordinances are appropriate subject for a declaratory judgment action." *Id.* The court ultimately found that the city's ordinance, to the extent that it prohibited the use of all political signs, violated the First Amendment to the United States Constitution and Section 11, Article I of Ohio's Constitution and permanently enjoined the city from enforcing the ordinance. *Id.* at 134.

{¶39} The circumstances in *Peltz* differs significantly from those in the present case. In *Peltz,* a plaintiff sought a declaration of his rights under a criminal ordinance (i.e., whether his placement of a political sign in his yard would violate the ordinance and subject him to penalties). Here, appellants are not seeking to have the court rule on the validity, construction, or application of R.C. 2905.12. Instead, appellants seek to use a perceived violation of a criminal statute by Miami University as a basis for a claim under R.C. 2905.12. However, as a claim of coercion is not a cognizable civil cause of action, appellants do not have standing to bring a claim under R.C. 2905.12 and the claim was properly dismissed.

### 3. R.C. 3709.212 Claim

{¶40} Appellants' amended complaint also alleges that Miami University acted beyond its statutory authority by implementing the COVID-19 vaccination policy. Appellants

acknowledge Miami University's Board of Trustees' authority to administer the university pursuant to R.C. 3339.01 and 3345.021.[4]  Nonetheless, appellants' amended complaint alleges that a recently enacted statute, R.C. 3709.212, limits the university's board of trustees from implementing the COVID-19 vaccination plan.[5]

**{¶41}** R.C. 3709.212, which became effective on March 24, 2021, provides as follows:

> Any order or regulation for the public health or for the prevention or restriction of disease *issued by a board of health of a city or general health district* under section 3709.20 or 3709.21 of the Revised Code may apply to only the following persons:
>
> (A) Those who have been medically diagnosed with the disease that is the subject of the order or regulation;
>
> (B) Those who have come in direct contact with someone who has been medically diagnosed with the disease that is the subject of the order or regulation;
>
> (C) Those that have had a documented incident in the building of the disease that is the subject of the order or regulation.
>
> As used in this section, "person" has the same meaning as in section 1.59 of the Revised Code.

(Emphasis added.)  Appellants argue that with the enactment of R.C. 3709.212, the General Assembly made it clear that local health departments, not state universities, are charged with issuing orders and regulations affecting public health.

**{¶42}** By its express terms, R.C. 3709.212 applies to orders or regulations issued

---

4. R.C. 3339.01 establishes Miami University's Board of Trustees.  R.C. 3345.021 provides that the "board of trustees of any college or university, which receives any state funds in support thereof, shall have full power and authority on all matters relative to the administration of such college or university."

5. Appellants also argue, for the first time on appeal, that Miami University's "unauthorized actions" of implementing the COVID-19 vaccination policy outside the authority of R.C. 3709.212 are a "violation of the non-delegation doctrine."  Neither appellants' amended complaint nor any of their filings in the trial court contain reference to the nondelegation doctrine.  It is well established that a party cannot raise a new issue or legal theory for the first time on appeal.  *State ex rel. Gutierrez v. Trumbull Cty. Bd. of Elections*, 65 Ohio St.3d 175, 177 (1992).

by a board of health or a general health district. It has nothing to do with the authority of Miami University's Board of Trustees to administer the university. The university's vaccination policy is not a public health order or regulation and the university's board of trustees is not a local health department.

**{¶43}** Additionally, by enacting R.C. 3792.04, which limits the authority of state universities to require vaccination to those vaccines that have been granted full FDA approval, the General Assembly implicitly recognized the authority of state university boards of trustees to adopt policies such as Miami University's COVID-19 vaccination policy.

**{¶44}** As alleged, appellants' amended complaint has failed to identify an injury or a justiciable controversy that resulted under R.C. 3709.212 from the board of trustees' implementation of Miami University's COVID-19 vaccination policy. Dismissal of appellants' R.C. 3709.212 claim was, therefore, proper.

### 4. R.C. 3792.04 Claims

**{¶45}** Appellants' amended complaint alleges that Miami University's COVID-19 vaccination policy violated R.C. 3792.04 by two means. First, by "require[ing] [appellants] to take a vaccine not approved by the FDA" and, second, by discriminating against them by treating them differently than those who had received a "non-FDA approved" or Emergency Use Authorization ("EUA") COVID-19 vaccine.

**{¶46}** R.C. 3792.04, which became effective on October 13, 2021, provides in pertinent part as follows:

> (B) Notwithstanding any conflicting provision of the Revised Code, a public school or state institution of higher education shall not do either of the following:
>
> (1) Require an individual to receive a vaccine for which the United States food and drug administration has not granted full approval;
>
> (2) Discriminate against an individual who has not received a

vaccine described in division (B)(1) of this section, including by requiring the individual to engage in or refrain from engaging in activities or precautions that differ from the activities or precautions of an individual who has received such a vaccine.

### a. Non-FDA approved vaccine requirement

{¶47} Appellants' amended complaint alleges that the university's COVID-19 vaccination policy forces them to take a vaccine that has not been granted full FDA approval. Appellants assert that at the time the university's vaccination policy was implemented, the only COVID-19 vaccines that were available had received only emergency use authorization from the FDA.

{¶48} We find that appellants do not have standing to bring a claim pursuant to R.C. 3792.04(B)(1) due to lack of injury or a real justiciable controversy between the parties. Miami University's COVID-19 vaccination policy does not force or require appellants to be vaccinated. As previously discussed, all three appellants were granted exemptions from vaccination. Two of the appellants, Ronald Siliko and Judy Vest, were granted exemptions prior to the amended complaint being filed. The third appellant, Jennifer Siliko, failed to seek an exemption before filing suit. However, after the hearing on appellants' TRO, Jennifer Siliko requested and was granted an exemption from Miami University's vaccination policy. For the reasons set forth in our discussion of appellants' Article I, Section I constitutional claim, we find that appellants have not been injured and no real justiciable controversy exists. Appellants' claim under R.C. 3792.04(B)(1) was properly dismissed for lack of standing.

### b. Discrimination claim

{¶49} Appellants' amended complaint also alleged that Miami University's vaccination policy unlawfully discriminated against them in violation of R.C. 3792.04(B)(2) as the policy "requires unvaccinated individuals such as [appellants] to engage in activities

and precautions different from those of individuals who have received non-FDA approved vaccines." Specifically, appellants alleged in their amended complaint that to obtain an exemption, they had to agree to release Miami University from certain liabilities, agree to comply with testing, and agree to comply with preventative measures such as masking. "To the extent that the preventative measures provision treats [appellants] differently than those vaccinated with the vaccines that are not FDA-approved, it discriminates in violations [sic] of R.C. 3792.04." Appellants further alleged they are treated differently than employees who took the EUA COVID-19 vaccines as Miami University implemented a "bonus program available only to their employees who have taken COVID-19 vaccines."

{¶50} In finding that appellants did not have standing to bring their R.C. 3792.04(B)(2) discrimination claim, the trial court found that "as unvaccinated employees Ronald Siliko and Judy Vest are subject to the same testing and safety measures as vaccinated employees. They are not subject to any additional requirements * * * [and] have not established an injury." In making this finding, the trial court improperly went beyond the information set forth in the amended complaint. Specifically, the court relied upon the affidavit of Fahner, who attested that "[c]urrently [Miami University's] employee safety protocols, including masking and testing, do not distinguish between vaccinated and unvaccinated status."

{¶51} "[A] court cannot rely upon evidence outside the complaint when considering a Civ.R. 12(B)(6) motion to dismiss." *Tankersley v. Ohio Fair Plan Underwriting Assn.*, 12th Dist. Clermont No. CA2018-01-003, 2018-Ohio-4386, ¶ 34. Only the complaint, and those documents attached to the complaint, may be considered by the court. *Id.* "If facts beyond those alleged in the complaint are necessary to dispose of a case, those facts must be developed and appropriately brought before the court utilizing the proper procedural vehicle." *Ward v. Graue*, 12th Dist. Clermont No. CA2011-04-032, 2012-Ohio-760, ¶ 15.

As the trial court did not convert the motion to dismiss to a motion for summary judgment, with notice to the nonmoving party and the opportunity to respond, we find the trial court erred in considering Fahner's affidavit.

{¶52} Limiting ourselves to the allegations set forth in the amended complaint, we find that appellants have sufficiently alleged facts establishing standing to bring their discrimination claim under R.C. 3792.04(B)(2).[6] Appellants' amended complaint sets forth allegations addressing the three factors of common-law standing – injury, causation, and redressability. Appellants allege that Miami University implemented a COVID-19 policy that treats them, as unvaccinated employees, differently than those employees who have taken the EUA COVID-19 vaccines. Appellants' amended complaint specifically mentions that they have been injured as they, unlike their vaccinated coworkers, must sign a release "releas[ing] [Miami University] from certain liabilities," comply with different preventative measures than their coworkers, including testing and masking, and are not able to participate in a bonus program that Miami University has been made available to vaccinated employees.[7] Appellants amended complaint specifically seeks relief, or redressability, in the form of "[p]reliminary and permanent injunctive relief prohibiting [Miami University], their officers, agents, employees, successors and attorneys and all those in active concert or participation with them, from enforcing the [vaccination policy] and from discriminating against [appellants] in violation of R.C. 3792.04."

6. We note that in addition to excluding consideration of Fahner's affidavit, we also excluded consideration of the unsworn and uncertified exemption request form and Exemption Process and FAQs document relied upon by appellants.

7. Miami University contends that "[a]ppellants have not alleged any action taken after the effective date of the statute. They have not alleged that any [a]ppellant suffered an adverse action or was treated differently than a vaccinated person after the effective date of the statute." R.C. 3792.04 went into effect on October 13, 2021. The amended complaint was filed the following day, on October 14, 2021. In ruling on a Civ.R. 12(B)(6) motion, we must "make all reasonable inferences in favor of the non-moving party." *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988). This includes the inference that Miami University has taken actions on or after October 13, 2021 that discriminate against appellants in the manner alleged by appellants in their amended complaint.

{¶53} We make no ruling as to the merits of appellants' discrimination claim. Rather, our holding is limited to finding that at this stage of the proceedings, appellants' amended complaint has alleged such a personal stake in the outcome of the controversy that they are entitled to have the court hear the claim that Miami University's COVID-19 vaccination policy discriminates against them in violation of R.C. 3792.04(B)(2). We therefore find that the trial court erred in dismissing this claim for lack of standing.

### III. CONCLUSION

{¶54} For the reasons discussed above, we sustain appellants' assignment of error in part and overrule it in part. To the extent that appellants have sufficiently alleged facts establishing standing to bring their discrimination claim under R.C. 3792.04(B)(2), we reverse the trial court's decision as to this claim only and remand the matter for further proceedings. In all other respects, the trial court's judgment is affirmed, as appellants lack standing, under common-law principles and under the Declaratory Judgment Act, to bring their claims that Miami University's COVID-19 vaccination policy violates Article I, Section I of the Ohio Constitution, R.C. 2905.12, 3709.212, or 3792.04(B)(1).

{¶55} Judgment affirmed in part, reversed in part, and the matter remanded for further proceedings.

M. POWELL, P.J., concurs.

PIPER, J., concurs in part and dissents in part.

**PIPER, J., concurring in part and dissenting in part.**

{¶56} I concur with the majority opinion that appellants lack standing to bring their claims that the COVID-19 vaccination policy violates Article I, Section I of the Ohio Constitution, R.C. 2905.12, 3709.212, or 3792.04(B)(1). However, I disagree with the majority opinion that appellants have sufficiently alleged facts demonstrating standing to

bring a claim for discrimination under R.C. 3792.04(B)(2). I therefore respectfully dissent in part.

**{¶57}** While a court evaluating a complaint pursuant to a Civ.R. 12(B)(6) motion must presume all factual allegations in the complaint as true and make all reasonable inferences in favor of the non-moving party, I find that appellants' amended complaint has not set forth facts that would allow them the declaratory or injunctive relief they seek due to a lack of standing to bring their discrimination claim. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988). "At a minimum, common-law standing requires the litigant to demonstrate that he or she has suffered (1) an injury (2) that is fairly traceable to the defendant's allegedly unlawful conduct and (3) is likely to be redressed by the requested relief." *Ohioans for Concealed Carry, Inc. v. Columbus*, 164 Ohio St.3d 291, 2020-Ohio-6724, ¶ 12. Within their amended complaint, appellants' discrimination claim fails to identify an injury that is fairly traceable to Miami University's implementation of the COVID-19 vaccination policy. Appellants rely on a general and vague suggestion of injury as a result of receiving a vaccine exemption and being required to sign a release, engage in preventative measures to stop the spread of COVID-19, and being deemed ineligible under a separate bonus program. Appellants seek to have the trial court and this court assume injuries that were not pled or identified in their complaint. "[A] plaintiff must * * * demonstrate 'actual present harm or significant possibility of future harm to justify preenforcement relief.'" *Id.* at ¶ 32, citing *Peoples Rights Org., Inc. v. Columbus*, 152 F.3d 522, 527 (6th Cir.1998). Here, the complaint is simply devoid of any allegation on which this court can conclude the significant possibility of future injury.

**{¶58}** To "discriminate" means to "make an unjust or prejudicial distinction in the treatment of different categories of people." *Murray v. UBS Sec., LLC.*, 43 F.4th 254, 259 (2d Cir.2022), citing *The New Oxford American Dictionary* (2001). Appellants' amended

complaint does not allege unjust or prejudicial distinction in their treatment. Merely being treated differently does not equate to being treated unlawfully from similarly situated persons.

{¶59} Accordingly, for the reasons stated above, I would affirm the trial court's dismissal of appellants' R.C. 3792.04(B)(2) discrimination claim as the amended complaint does not sufficiently set forth facts establishing standing.