[Cite as *Lipp v. Univ. of Cincinnati*, 2023-Ohio-1224.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| BENJAMIN LIPP, | : | APPEAL NO. C-220312 |
| | | TRIAL NO. A-2104238 |
| DANIELLE SEYMORE, | : | |
| | | *O P I N I O N.* |
| KATELYN VERBARG, | : | |
| and | : | |
| NICHOLAI LEKSON, | : | |
| Plaintiffs-Appellants, | : | |
| vs. | : | |
| THE UNIVERSITY OF CINCINNATI, | : | |
| and | : | |
| RONALD BROWN, THOMAS MISCHELL, KIM HEIMAN, PHIL COLLINS, MICHELLE GILLIS, MONICA TURNER, PHILLIP HOLLOMAN, GREGORY HARTMANN, JILL MCGRUDER, in their official capacity as members of the Board of Trustees of the University of Cincinnati, | : : : : | |
| Defendants-Appellees. | : | |

Civil Appeal From:    Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: April 14, 2023

*Mendenhall Law Group, Thomas W. Connors, Warner Mendenhall* and *Kyle Wenning*, for Plaintiffs-Appellants,

*Frost Brown Todd LLC, Ali Razzaghi, Ryan W. Goellner* and *Nathaniel L. Truitt*, for Defendants-Appellees.

**KINSLEY, Judge.**

{¶1}    To avoid making decisions about policy that are best determined by the democratic process, courts reject cases that do not present a live controversy between the parties.  This appeal presents such a circumstance.  Four University of Cincinnati students asked the trial court to declare the University's COVID-19 pandemic policies invalid and to enjoin the University from enforcing them.  But because they failed to establish an injury traceable to the challenged policies, the students lack standing to raise claims for declaratory and injunctive relief.  In the absence of an active legal dispute between the students and the University, we uphold the trial court's dismissal of this case and decline the invitation to adjudicate matters of public policy.

### 1.  Factual and Procedural Background

{¶2}    Plaintiffs-appellants Benjamin Lipp, Danielle Seymore, Katelyn Verbarg, and Nicholai Lekson filed a complaint for declaratory judgment and injunctive relief against the University of Cincinnati and its Board of Trustees (collectively "the University") on December 10, 2021, and then an amended complaint on February 24, 2022.  The amended complaint challenged four separate policies that the University issued in response to the COVID-19 pandemic.

{¶3}    The first challenged policy required that all students, faculty, and staff who were not granted a vaccination exemption be vaccinated by the end of the University's spring 2022 term.  In addition to requiring vaccination, this policy stated, "[s]tudents who have not been vaccinated or received an approved exemption by the end of the spring 2022 semester or those who do not comply with the weekly testing requirement will be reported to the Office of Student Conduct and Community Standards for disciplinary action, which can lead to separation from the university."

{¶4}    The second challenged policy required all individuals to wear a facial covering indoors and required unvaccinated individuals to wear a facial covering when outdoors and unable to maintain social distancing.  This policy instructed that "[i]f a student repeatedly forgets to wear a facial covering to class and doesn't have a medical exemption as outlined in the above section, [employees should] contact the appropriate college dean or unit vice president * * * for possible discipline related to noncompliance."

{¶5}    The third challenged policy required unvaccinated students, faculty, and staff to be tested weekly for COVID-19.  And the fourth challenged policy provided that persons who were exposed to COVID-19 and were either nonvaccinated or vaccinated and eligible for a booster but not yet boosted should quarantine for five full days from the date of exposure.

{¶6}    The amended complaint alleged that Lipp, Seymore, Verbarg, and Lekson (collectively "the students") were students at the University and that Lipp, Seymore, and Verbarg had been granted vaccination exemptions.  It further alleged that Lekson met the University's vaccination requirement, but that he objected to the coercion involved in the mandatory vaccination policy and to the possibility of being required to receive a booster shot to maintain enrollment.  The amended complaint set forth no other facts regarding the students, including whether they attended in-person or remote classes at the University, whether they had personally been subjected to the University's COVID-19 testing and masking protocols, whether they had ever knowingly been exposed to COVID-19, or whether they had ever quarantined as a result of COVID-19 exposure.

{¶7} The students sought a declaratory judgment that the challenged policies were void because they were in violation of both Ohio statutory and constitutional law on several different grounds. The amended complaint first alleged that the University lacked authority to order public health and preventive health measures, including vaccination, masking, and testing for persons not diagnosed with a disease or who have not come into direct contact with someone diagnosed with a disease. In support of this claim, the students alleged that the University's actions exceeded the limits set forth in R.C. 3709.212, a statute establishing to whom orders or regulations issued for the public health or for the prevention or restriction of disease may be applied.

{¶8} The amended complaint next alleged that the challenged policies violated the students' right to refuse medical treatment under Article 1, Section 1 of the Ohio Constitution. The students specifically alleged that the University's masking and vaccine requirements were both forms of medical treatment they had the right to refuse.

{¶9} Third, the amended complaint alleged that the University's policies violated R.C. 2905.12, a criminal statute concerning coercion. The students contended that the challenged policies involve the taking or withholding of official action to coerce the students on matters for which they have a legal freedom of choice.

{¶10} Last, the amended complaint alleged that the challenged policies violated R.C. 3792.04, a statute that sets forth prohibitions on mandatory vaccinations and discrimination against unvaccinated persons at state institutions of higher education. The students specifically contended that the policies were in violation of this statute because they require students, faculty, and staff to receive vaccinations that have not been fully approved by the Food and Drug Administration ("FDA") and

because they require unvaccinated persons to engage in or refrain from engaging in activities or precautions that differ from the activities or precautions of persons who have received vaccinations not fully approved by the FDA.

{¶11} The University filed a motion to dismiss the amended complaint, arguing that the students lacked standing to challenge the University's policies because they suffered no injury. In support, the University argued that Lipp, Seymore, and Verbarg suffered no injury because they were granted vaccination exemptions, and the complaint did not contain any allegations that they were required to quarantine or undergo weekly COVID-19 testing. As to Lekson, the University argued that he suffered no injury because he was vaccinated and had not sought an exemption, and it also contended that his objection to the possibility of having to receive a booster shot in the future was not sufficient to confer standing.

{¶12} The University further argued that dismissal of the amended complaint was appropriate because the students' claims had been rendered moot by the University's revocation of the challenged policies. The University provided documentation along with both the motion to dismiss and the reply in support of the motion to dismiss establishing that mandatory weekly COVID-19 testing for unvaccinated students, faculty, and staff ceased effective February 28, 2022; that all masking restrictions were eliminated, including in classrooms and labs, effective March 12, 2022; and that COVID-19 vaccination was no longer required beginning with the summer 2022 term.

{¶13} Additionally, the University sought dismissal of the complaint on the grounds that the students had failed to state a claim upon which relief could be granted.

{¶14} After considering the motion to dismiss, the students' brief in opposition, and the University's reply in support of the motion, the trial court issued an entry granting the motion to dismiss. The entry stated:

[T]he Court finds the motion well-taken; as such, the motion is GRANTED, for the reasons expressed in the defendants' motion itself, and considering the fact that the University has amended its COVID-19 policy. It is this Court's holding that with the amended policy, the plaintiffs' claims are rendered moot.

Accordingly, because none of these plaintiffs are being forced to receive a COVID-19 vaccine, they lack standing. Further, even if they had standing, because the University no longer mandates that students [are] to receive a vaccine, the plaintiffs' claims are moot.

{¶15} The students have appealed from the trial court's entry dismissing their amended complaint. In two assignments of error, they challenge the trial court's dismissal on the grounds of standing and mootness.

### 2. *Standard of Review*

{¶16} We review a trial court's ruling on a Civ.R. 12(B)(6) motion to dismiss de novo. *Plush v. Cincinnati*, 2020-Ohio-6713, 164 N.E.3d 1056, ¶ 12 (1st Dist.). A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief may be granted tests the sufficiency of the complaint. *Thomas v. Othman*, 2017-Ohio-8449, 99 N.E.3d 1189, ¶ 18 (1st Dist.). When ruling on such a motion, the trial court is confined to the allegations in the complaint, must accept all the allegations as true, and must draw all reasonable inferences in favor of the nonmoving party. *Plush* at ¶ 12. A Civ.R. 12(B)(6) motion to dismiss should only be granted if it "appear[s] beyond

a doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *Id.*, quoting *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus.

### 3. Standing

{¶17} In their first assignment of error, the students argue that the trial court erred in dismissing the amended complaint on the grounds that they failed to state facts establishing standing. Whether standing has been established is a question of law that we review de novo. *Ohioans for Concealed Carry, Inc. v. City of Columbus*, 164 Ohio St.3d 291, 2020-Ohio-6724, 172 N.E.3d 935, ¶ 12.

### 4. General Standing Principles

{¶18} Before a court will consider the merits of a legal claim, plaintiffs must establish that they have standing to sue. *Id.* Standing may be established under the common law or conferred by statute. *Id.* Here, the students contend that they have standing under both the common law and under R.C. 2721.03, the Declaratory Judgment Act. Because standing is jurisdictional, it is determined at the time that a suit is commenced. *Wells Fargo Bank, N.A. v. Braunskill*, 1st Dist. Hamilton No. C-140014, 2015-Ohio-273, ¶ 17.

### a. Common-Law Standing

{¶19} Common-law standing requires a plaintiff to demonstrate, at a minimum, that "he or she has suffered (1) an injury (2) that is fairly traceable to the defendant's allegedly unlawful conduct and (3) is likely to be redressed by the requested relief." *Ohioans for Concealed Carry* at ¶ 12. Standing depends not on the merits of the plaintiffs' claims, "but rather on 'whether the plaintiffs have alleged such

8

a personal stake in the outcome of the controversy that they are entitled to have a court hear their case.' " *Id.*, quoting *ProgressOhio.org, Inc. v. JobsOhio*, 139 Ohio St.3d 520, 2014-Ohio-2382, 13 N.E.3d 1101, ¶ 7.

### b.     *Statutory Standing Under the Declaratory Judgment Act*

**{¶20}** As to standing under the Declaratory Judgment Act, R.C. 2721.03 applies to those "whose rights, status, or other legal relations are affected by a constitutional provision [or] statute." *ProgressOhio.org* at ¶ 19.   The statute specifically provides that:

> Subject to division (B) of section 2721.02 of the Revised Code, any person interested under a deed, will, written contract, or other writing constituting a contract or any person whose rights, status, or other legal relations are affected by a constitutional provision, statute, rule as defined in section 119.01 of the Revised Code, municipal ordinance, township resolution, contract, or franchise may have determined any question of construction or validity arising under the instrument, constitutional provision, statute, rule, ordinance, resolution, contract, or franchise and obtain a declaration of rights, status, or other legal relations under it.

R.C. 2721.03.

**{¶21}** The following are the necessary prerequisites to obtaining declaratory relief under the statute: "(1) a real controversy between the parties, (2) justiciability, and (3) the necessity of speedy relief to preserve the parties' rights." *ProgressOhio.org* at ¶ 19.  Declaratory judgment actions are typically brought before the plaintiff has suffered an injury-in-fact. *Ohioans for Concealed Carry*, 164 Ohio St.3d 291, 2020-

Ohio-6724, 172 N.E.3d 935, at ¶ 32. Regardless, a plaintiff must still show "actual present harm or a significant possibility of future harm to justify pre-enforcement relief." *Id.*, quoting *Peoples Rights Org., Inc. v. Columbus*, 152 F.3d 522, 527 (6th Cir.1998). While a plaintiff need not wait for an injury to in fact occur, the fact of a certain, impending injury must be established. *Id.* As a general principle, an idealistic opposition to a challenged law is insufficient to confer standing under the Declaratory Judgement Act. *Id.* at ¶ 36.

{¶22} Standing "is not dispensed in gross" and must be established for each claim asserted. *Id.* at ¶ 13, quoting *Preterm-Cleveland, Inc. v. Kasich*, 153 Ohio St.3d 157, 2018-Ohio-441, 102 N.E.3d 461, ¶ 30. We therefore consider whether the students have alleged facts in the amended complaint to establish standing for each asserted claim under both the common law and the Declaratory Judgment Act.

### 5. *Lack-of-Authority Claim*

{¶23} With respect to this claim, the amended complaint alleged that the University "lack[ed] authority to order public health or preventative health measures, such as vaccination, masking, or testing for persons not diagnosed with a disease or who have not come into direct contact with someone diagnosed with a disease." The amended complaint further contended that R.C. 3709.212 limits the application of health orders and regulations to those who have been medically diagnosed with a disease or in direct contact with such persons and that the University's policies exceeded the limits set forth in this statute. It specifically asserted that the challenged masking and testing policies "exceed[ed] Defendants' general authority to administer the University."

{¶24} R.C. 3709.212, which serves as the basis for this claim, provides that:

Any order or regulation for the public health or for the prevention or restriction of disease issued by a board of health of a city or general health district under section 3709.20 or 3709.21 of the Revised Code may apply to only the following persons:

(A) Those who have been medically diagnosed with the disease that is the subject of the order or regulation;

(B) Those who have come in direct contact with someone who has been medically diagnosed with the disease that is the subject of the order or regulation;

(C) Those that have had a documented incident in the building of the disease that is the subject of the order or regulation.

{¶25} Before turning to an analysis of whether the students have standing to assert this claim, we find instructive a recent opinion issued by the Twelfth District which involved standing arguments nearly identical to those raised in the case at bar.

{¶26} In *Siliko v. Miami Univ.*, 12th Dist. Butler No. CA2021-12-162, 2022-Ohio-4133, the court considered a lawsuit challenging a COVID-19 policy enacted by Miami University ("Miami"). The plaintiffs in *Siliko* were three employees of Miami who filed a complaint for declaratory judgment and injunctive relief challenging Miami's requirement that all employees and students, unless granted an exemption, had to be vaccinated by November 21, 2021. At the time the complaint was filed, two of the plaintiffs had received vaccine exemptions. The third plaintiff had not sought an exemption at that time, but later sought and was granted an exemption while the lawsuit was pending. *Id*. at ¶ 7. The plaintiffs alleged that Miami's vaccination policy violated Article 1, Section 1 of the Ohio Constitution, R.C. 2905.12, and R.C. 3792.04.

Relying on R.C. 3709.212, they additionally alleged that Miami lacked statutory authority to implement the policy because that statute limited a health board's authority to issue orders and regulations for the prevention or restriction of disease to persons diagnosed with a disease or in direct contact with a diagnosed person. *Id.* at ¶ 4. The claims asserted in *Siliko* were thus identical to the claims raised in the case before us.

**{¶27}** In *Siliko,* the trial court granted Miami's motion to dismiss the complaint after finding that the plaintiffs failed to establish an injury and lacked standing. *Id.* at ¶ 10. The Twelfth District affirmed in part and reversed in part, ultimately holding that the plaintiffs lacked standing on all claims except for the claim asserting a violation of R.C. 3792.04(B)(2). We discuss the *Siliko* court's finding on standing with respect to each of the claims asserted by the plaintiffs in the corresponding section of this opinion.

**{¶28}** With respect to the claim under R.C. 3709.212 that Miami exceeded its statutory authority by implementing the vaccination policy, the *Siliko* court first explained that, by its owns terms, R.C. 3709.212 only applied to orders or regulations that were issued by a board of health or a general health district and that the statute had nothing to do with the authority of Miami's Board of Trustees to administer the university, as the board was not a local health department. *Id.* at ¶ 42. The court further held that the plaintiffs' complaint failed to identify any injury or justiciable controversy that resulted under R.C. 3709.212 from the implementation of Miami's vaccination policy. *Id.* at ¶ 44.

**{¶29}** With regard to standing in this case, the students' lack-of-authority claim, as plead in the amended complaint, pertains specifically to the University's

vaccination, masking, and testing policies, and not the quarantine policy, as it states that the University "lack[ed] authority to order public health or preventative health measures, such as vaccination, masking, or testing for persons not diagnosed with a disease or who have not come into direct contact with someone diagnosed with a disease." The amended complaint, however, lacks any allegations that the students were injured in any articulable, particularized way by the University's vaccination, masking, and testing policies. The amended complaint contains no allegations, for example, that the students were denied a vaccination exemption or forced to vaccinate. (In fact, all of the students either obtained an exemption from the vaccination requirement or were vaccinated.) Nor does it contain any allegations that the students were forced to submit to COVID-19 testing. It also does not allege that the students were on-campus students subject to these policies and masking in particular, rather than students engaged in remote learning to whom the policies would not apply. Quite simply, the amended complaint does not contain facts establishing that the students suffered either an injury-in-fact or the significant possibility of future harm to establish standing under the common law or the Declaratory Judgment Act. *See Ohioans for Concealed Carry, Inc.*, 164 Ohio St.3d 291, 2020-Ohio-6724, 172 N.E.3d 935, at ¶ 12 and 32.

{¶30} Furthermore, we reach the same conclusion as the Twelfth District in *Siliko* with respect to the inapplicability of R.C. 3909.212. *Siliko*, 12th Dist. Butler No. CA2021-12-162, 2022-Ohio-4133, at ¶ 42. Like Miami, the University is not a board of health or general health district or department and thus does not fall within the purview of R.C. 3909.212. By definition, the students cannot suffer injury under a

statute aimed at controlling the conduct of an agency other than the defendant in the case.

{¶31} In the absence of any facts alleged in the complaint to explain how the students were individually injured by the University's masking, testing, or vaccination policies, and given the inapplicability of R.C. 3909.212 to the University, we accordingly hold that the trial court did not err in finding that the students lacked standing to assert a claim for lack of authority.

### 6. *Violation of the Right to Refuse Medical Treatment*

{¶32} In support of this claim, the amended complaint alleged that the students have a fundamental right under Article 1, Section 1 of the Ohio Constitution to refuse medical treatment and that the University's policies requiring them to wear masks and to receive COVID-19 vaccinations were forms of medical treatment that they have a constitutional right to refuse.

{¶33} In considering whether the plaintiffs had standing to assert this claim, the *Siliko* court held that the plaintiffs failed to establish standing under both the common law and the Declaratory Judgment Act because each plaintiff, either before or during the litigation, had sought and been granted a vaccination exemption. *Siliko*, 12th Dist. Butler No. CA2021-12-162, 2022-Ohio-4133, at ¶ 27. It reasoned that the plaintiffs, having been granted exemptions, suffered no injury, and that the granting of the exemptions resulted in the lack of a justiciable controversy between the parties. *Id*. at ¶ 31-32.

{¶34} In the case at bar, the students' claim for a violation of the right to refuse medical treatment under the Ohio Constitution specifically concerns the University's vaccination and masking policies. As to the vaccination policy, Lipp, Seymore, and

Verbarg were granted vaccination exemptions. They therefore were not denied the right to refuse medical treatment in the form of a vaccine and, as a result, suffered no injury.

{¶35} Lekson, however, met the University's vaccination requirement, but objected to the mandatory vaccination policy because of the possibility that he could be required to receive a booster shot to maintain enrollment. The amended complaint contains no allegation that Lekson was forced to receive the COVID-19 vaccination against his will or that he is or will be, in fact, required to receive a booster shot. Nor does it allege that Lekson was an on-campus student who would have been subject to the vaccination requirement. We therefore find that he failed to establish an injury in fact or that he faced a significant possibility of future harm from the vaccination policy.

{¶36} To the extent that this claim concerns the University's masking policy, we reach the same conclusion. The amended complaint contains no allegation that any of the students attend classes on-campus and are therefore subject to the masking policy or that they were otherwise forced by the University to mask against their will.

{¶37} Because the students pleaded no facts from which we can discern an injury as to the vaccination and masking requirements, the trial court did not err in finding that the students lacked standing under both the common law and the Declaratory Judgment Act to assert a claim for a violation of their right to refuse medical treatment.

### 7. *Violation of R.C. 2905.12*

{¶38} The amended complaint further alleged that the University violated R.C. 2905.12, which provides in relevant part that "No person, with purpose to coerce another into taking or refraining from action concerning which the other person has a

legal freedom of choice, shall * * * [t]ake, withhold, or threaten to take or withhold official action, or cause or threaten to cause official action to be taken or withheld." R.C. 2905.12(A)(5).

**{¶39}** In support of the claim, the students alleged that the challenged policies involved taking or withholding official action to coerce them on matters for which they have a legal freedom of choice, including "(1) the [policies'] health orders to the extent Plaintiffs are not diagnosed with a disease or in direct contact with someone so diagnosed, (2) the taking of vaccines or masking under Article 1, Section 1 of the Ohio Constitution, which provides the right to refuse medical treatment, and (3) taking Covid-19 vaccines not fully approved by the FDA." More succinctly, the students contend that the University has threatened suspension and expulsion for noncompliance with the policies.

**{¶40}** The *Siliko* court held that the plaintiffs in that case lacked standing to challenge Miami's vaccination policy on the grounds that the policy violated R.C. 2905.12. *Siliko*, 12th Dist. Butler No. CA2021-12-162, 2022-Ohio-4133, at ¶ 36. Because the plaintiffs had been granted exemptions and had not been coerced into taking the COVID-19 vaccination, they were unable to show any injury. *Id.*

**{¶41}** The amended complaint in this case seemingly alleges that all four challenged policies violate R.C. 2905.12. With respect to the mandatory-vaccination policy, we follow *Siliko* and hold that the students have failed to show any injury resulting from this policy. None of the students were coerced into taking the COVID-19 vaccination. Lipp, Seymore, and Verbarg were granted exemptions, and Lekson voluntarily received the vaccination without seeking an exemption.

16

**{¶42}** As to the masking and testing policies, we again note that the amended complaint contains no allegations that the students were, in fact, coerced into submitting to COVID-19 testing, that they were ever required to submit to COVID-19 testing, that they were subjected to masking, or that the students were on-campus students to whom these policies would apply at the outset.

**{¶43}** Turning to the quarantine policy, the amended complaint contains no allegation that any of the students were ever knowingly exposed to COVID-19, much less that they were required to quarantine or coerced into quarantining against their will as a result. What is more, the University's quarantine policy contains no enforcement mechanism and is therefore merely a guideline. The policy states, "for spring 2022, quarantine *may be* required for students exposed to COVID-19. Isolation will be required for those who have viral symptoms (https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html) associated with COVID-19 and for those who test positive with COVID-19." (Emphasis added.) The policy further states that nonvaccinated persons and those who are not up to date on their COVID vaccination *should* quarantine away from others for five full days after the last exposure. Per the plain language of the policy, those who disregard the suggested quarantine recommendation are not subject to discipline or any form of sanction. Adherence to the University's quarantine guideline is therefore purely voluntary.

**{¶44}** As any injury related to the University's quarantine policy is simply speculative at best, the students lack standing to challenge the quarantine policy on the grounds that it violates R.C. 2905.12 under both the common law and the

Declaratory Judgment Act, and the trial court did not err in reaching the same conclusion.

### 8. *Violation of R.C. 3792.04*

{¶45} The fourth claim in the amended complaint alleged that the University's policies violated R.C. 3792.04. Subsection (B) of this statute provides in relevant part that:

Notwithstanding any conflicting provision of the Revised Code, a public school or state institution of higher education shall not do either of the following:

(1) Require an individual to receive a vaccine for which the United States food and drug administration has not granted full approval;

(2) Discriminate against an individual who has not received a vaccine described in division (B)(1) of this section, including by requiring the individual to engage in or refrain from engaging in activities or precautions that differ from the activities or precautions of an individual who has received such a vaccine.

R.C. 3792.04(B).

{¶46} The amended complaint alleged that the University's vaccination policy violated this statute because the only COVID-19 vaccines currently available were authorized for emergency use only and had not been fully approved by the FDA. It also alleged that the testing policy violated this statute because that policy required unvaccinated persons to submit to weekly COVID-19 testing but did not require persons vaccinated with non-FDA approved vaccines to submit to such testing. And it additionally alleged that the quarantine policy violated R.C. 3792.04 by requiring

someone who is unvaccinated to quarantine and treating them differently than someone who received a non-FDA approved vaccine.

**{¶47}** In analyzing the plaintiffs' standing to bring this same claim, the *Siliko* court held that the plaintiffs lacked standing to bring a claim that Miami's vaccination policy violated R.C. 3792.04(B)(1) due to a lack of injury and lack of a real justiciable controversy. *Siliko*, 12th Dist. Butler No. CA2021-12-162, 2022-Ohio-4133, at ¶ 48. It explained that not only did the policy did not force persons to be vaccinated, but that all three plaintiffs had been granted vaccination exemptions. *Id.*

**{¶48}** The *Siliko* court reached a different holding with respect to the plaintiffs' standing to bring a discrimination claim under R.C. 3792.04(B)(2). It cited to the detailed allegations in the complaint that Miami's vaccination program required unvaccinated employees to comply with different preventative measures than vaccinated coworkers, including testing and masking, and that unvaccinated employees were not able to participate in a bonus program available to vaccinated employees. *Id.* at ¶ 52. Further supporting the plaintiffs' standing in *Siliko* was the requirement that those seeking a vaccine exemption release Miami from certain liabilities. *Id.* The court held that these allegations, coupled with the language in the complaint seeking preliminary and permanent injunctive relief, established injury, causation, and redressability. *Id.*

**{¶49}** We first consider the students' claim in this case that the University's vaccination policy violated R.C. 3792.04 because it required them to receive a vaccination that had not been fully approved by the FDA. Following *Siliko*, we hold that the students have failed to establish either an actual injury or the significant possibility of future harm. Like Miami's policy, the University's policy did not require

19

students, faculty, or staff to receive a vaccination. Further, Lipp, Seymore, and Verbarg were granted vaccination exemptions, while Lekson voluntarily received a vaccine without seeking an exemption. The students therefore pleaded facts that affirmatively established the absence of an injury under R.C. 3792.04(B)(1).

{¶50} With regard to the students' claim of discrimination under R.C. 3792.04(B)(2), we note that Miami's vaccination policy differed from the vaccination policy at issue in this case in multiple significant ways. For one thing, the University's policy did not hinge participation in a bonus program on vaccination status, thereby rewarding the vaccinated while excluding the unvaccinated. For another, the University's policy did not require students seeking a vaccine exemption to sign a liability waiver, while preserving liability claims for the vaccinated. The allegations of injury under R.C. 3792.04(B)(2) that are present in *Siliko* are thus absent in the students' amended complaint.

{¶51} We next consider the students' claim that the testing and quarantine policies violated R.C. 3792.04(B)(2) by discriminating against unvaccinated persons and requiring them to submit to weekly COVID-19 testing and quarantine requirements, while vaccinated persons were not subject to the same interventions. And we again conclude that the amended complaint fails to contain sufficient allegations to establish standing. As to the testing policy, the amended complaint contains no allegations that the students were actually forced to undergo testing or that they, in fact, were not willing to submit to the testing.

{¶52} The amended complaint likewise fails to establish any actual injury or the significant possibility of future harm arising from the quarantine policy. The amended complaint contains no allegations that the students were ever knowingly

exposed to COVID-19, thus requiring them to quarantine. And, significantly, the quarantine policy contains no enforcement mechanism. Persons who fail to quarantine are not subject to any discipline for failing to do so.

{¶53} We consequently hold that the trial court did not err in finding that the students lacked standing to bring a claim for a violation of R.C. 3792.04.

### 9. Standing Conclusion

{¶54} Because the students failed to establish an actual injury or the significant possibility of future harm traceable to any of the challenged policies, they lacked standing under both the common law and the Declaratory Judgment Act to bring the claims in the amended complaint. We therefore hold that the trial court did not err in dismissing the amended complaint on the ground that the students lacked standing. The first assignment of error is overruled.

### 10. Mootness

{¶55} In their second assignment of error, the students argue that the trial court erred in dismissing the amended complaint on mootness grounds, contending that the University did not meet its burden of showing that the allegedly wrongful behavior could not reasonably be expected to recur. Our resolution of the first assignment of error has rendered this assignment of error moot, and we decline to address it.

### 11. Conclusion

{¶56} Because the students lacked standing to challenge all four policies issued by the University in response to the COVID-19 pandemic, the trial court did not

err in granting the motion to dismiss the amended complaint. The judgment of the trial court is, accordingly, affirmed.

Judgment affirmed.

**ZAYAS, P.J.,** and **BOCK, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.