[Cite as *Hoerig v. Bowling Green State Univ.*, 2023-Ohio-3189.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

| | |
|---|---|
| Andrea Hoerig, et al. | Court of Appeals No. WD-22-047 |
| Appellants | Trial Court No. 2021CV0456 |
| v. | |
| Bowling Green State University, et al. | **DECISION AND JUDGMENT** |
| Appellees | Decided: September 8, 2023 |

* * * * *

Thomas W. Connors and Warner Mendenhall, for appellants.

Dave Yost, Attorney General of Ohio, and
James B. Yates and Jade L. Robinson, for appellees.

* * * * *

**SULEK, J.**

{¶ 1} Appellants Andrea Hoerig, Carolyn Dailey, Gabrielle Downard, and Amy Vorst appeal from a judgment of the Wood County Court of Common Pleas dismissing their claims for declaratory and injunctive relief against appellees Bowling Green State University and each individual member of its board of trustees (collectively "BGSU").

Appellants' claims challenged BGSU's now rescinded Covid-19 vaccine, testing, and mask wearing policies. Because appellants' claims are moot, the trial court's judgment is affirmed.

## I. Factual Background and Procedural History

{¶ 2} On August 5, 2021, BGSU imposed a mask mandate in response to health concerns surrounding Covid-19.

{¶ 3} Thereafter, on September 2, 2021, BGSU issued Policy 3341-1-11 ("the Policy"), imposing a vaccine and testing mandate. Specifically, it required all non-exempt faculty, employees, and students to provide proof of a Covid-19 vaccination on or before November 29, 2021. Any individuals that were exempt from the vaccination were subject to testing and limited from some campus activities. Any faculty or employees of BGSU who failed to comply with the requirements set forth in the Policy could be subject to disciplinary action. Students that failed to comply with the Policy would be barred from attending classes in person.

{¶ 4} It is undisputed that BGSU voluntarily ceased imposing the mask mandate on February 26, 2022, and the vaccine and testing mandate on May 5, 2022.

{¶ 5} Appellants initially filed a complaint on December 23, 2021. BGSU moved to dismiss the complaint, which the trial court granted, but appellants were given 30 days to amend.

{¶ 6} On March 28, 2022, appellants filed an amended complaint seeking declaratory judgments that: (1) the Policy exceeds BGSU's general authority to administer the University under R.C. 3341.02 and R.C. 3345.021; (2) the Policy violates their right to refuse medical treatment under Article I, Section 1 of the Ohio Constitution and 21 U.S.C. 360bbb-3(e)(1)(A)(ii)(III); (3) BGSU coerced appellants to accept medical treatment in violation of R.C. 2905.12; and (4) the Policy requires appellants to take a vaccine not approved by the FDA in violation of R.C. 3792.04. Appellants also sought preliminary and permanent injunctive relief prohibiting BGSU from enforcing the Policy and from discriminating against appellants in violation of their statutory and constitutional rights.

{¶ 7} BGSU moved to dismiss the amended complaint arguing that appellants lacked standing, that appellants' claims were moot because the policy was no longer in effect, that BGSU possessed statutory authority to enact the Policy, that the Policy did not interfere with any fundamental rights, that appellants could not assert a cognizable claim for coercion under R.C. 2905.12; and that R.C. 3792.04 was inapplicable because certain vaccines had been fully approved by the FDA.

{¶ 8} In granting BGSU's motion to dismiss, the trial court held that appellants' claims were moot because the vaccine, testing, and masking mandates were no longer in place and that there was "insufficient evidence to find that there is more than a theoretical possibility that the action will arise again." The court further concluded that appellants

3.

lacked standing to challenge the vaccine plan because Dailey, Downard, and Vorst had applied for an exemption and were subject to the same masking requirements as other students. It also determined that appellants failed to state a claim as to the mask mandate and for coercion.

## II. Assignments of Error

{¶ 9} Appellants present the following assignments of error:

1. The trial court erred in dismissing appellants' first amended complaint for failure to state facts establishing standing, since there is a set of facts consistent with the complaint which would establish such standing.

2. The trial court erred in dismissing appellants' first amended complaint for mootness, since the University did not meet its heavy burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.

3. The trial court erred in dismissing appellants' first amended complaint for failure to state a claim for declaratory judgment.

## III. Law and Analysis

{¶ 10} The issue of mootness raised by appellants' second assignment of error is dispositive, therefore it will be addressed first.

{¶ 11} "The role of courts is to decide adversarial legal cases and to issue judgments that can be carried into effect." *Cyran v. Cyran*, 152 Ohio St.3d 484, 2018-

4.

Ohio-24, 97 N.E.3d 487, ¶ 9, citing *Fortner v. Thomas*, 22 Ohio St.2d 13, 14, 257 N.E.2d 371 (1970); *State v. Smith*, 6th Dist. Wood No. WD-22-053, 2023-Ohio-1779, ¶ 14. "Under the mootness doctrine, American courts will not decide cases in which there is no longer an actual legal controversy between the parties." *Id.*, citing *In re A.G.*, 139 Ohio St.3d 572, 2014-Ohio-2597, 13 N.E.3d 1146, ¶ 37. "If the controversy has come and gone, then this court must dismiss the case as moot." *M.R. v. Niesen*, 167 Ohio St.3d 404, 2022-Ohio-1130, 193 N.E.3d 548, ¶ 7.

{¶ 12} "Subject-matter jurisdiction is the power of a court to entertain and adjudicate a particular class of cases." *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 19, citing *Morrison v. Steiner*, 32 Ohio St.2d 86, 87, 290 N.E.2d 841 (1972). "Mootness is a jurisdictional question because the Court 'is not empowered to decide moot questions or abstract propositions.'" *Napier v. Ickes*, 2019-Ohio-2774, 140 N.E.3d 137, ¶ 85 (9th Dist.), quoting *State v. Feister*, 5th Dist. Tuscarawas No. 2018 AP 01 0005, 2018-Ohio-2336, ¶ 18, quoting *United States v. Alaska S.S. Co.*, 253 U.S. 113, 116, 40 S.Ct. 448, 64 L.Ed.808 (1920); *see also* Ohio Constitution, Article IV, Section 1 (limiting courts' authority to the "judicial power"); Ohio Constitution Article IV, Section 4(B) (courts of common pleas "shall have such original jurisdiction over all justiciable matters * * * as may be provided by law"). "Courts of common pleas' jurisdiction is limited to 'justiciable matters.' * * * 'If what were once justiciable matters have been resolved to the point where they become moot,

5.

the courts of common pleas no longer have subject matter jurisdiction to hear the case.'" *Graham v. City of Lakewood*, 2018-Ohio-1850, 113 N.E.3d 44, ¶ 23 (8th Dist.), quoting *Hirsch v. TRW, Inc.*, 8th Dist. Cuyahoga No. 83204, 2004-Ohio-1125, ¶ 11; *Park Lane Apts. v. Parks*, 6th Dist. Lucas No. L-20-1208, 2021-Ohio-3510, ¶ 2 ("[m]ootness is an issue of subject-matter jurisdiction"); *Doran v. Heartland Bank*, 2018-Ohio-1811, 112 N.E.3d 355, ¶ 13 (10th Dist.); *Wedgewood Ltd. Partnership I v. Liberty Twp. Bd. of Zoning Appeals*, 187 Ohio App.3d 24, 2010-Ohio-2068, 930 N.E.2d 873, ¶ 31 (5th Dist.).

{¶ 13} In this case, appellants do not seek damages for any injury allegedly caused by BGSU's mask, vaccine, and testing policies. Instead, appellants have filed a complaint seeking only declaratory and injunctive relief. However, once BGSU voluntarily ceased imposing its mask, vaccine, and testing mandates no actual legal controversy existed between the parties. In truth, appellants are seeking a declaration that non-existent mandates are unconstitutional and/or illegal. Similarly, appellants are seeking injunctive relief to prevent the enforcement of mandates that are no longer in effect. As such, the trial court cannot grant appellants any judgment that could be carried into effect and any decision it could render on the subject of the constitutionality or legality of BGSU's mandates would be purely advisory.

{¶ 14} On appeal, appellants argue that the trial court erred in dismissing the case as moot because BGSU voluntarily ceased imposing its mandates and did not demonstrate that the allegedly wrongful behavior could not reasonably be expected to

6.

recur.  *See West Virginia v. Environmental Protection Agency*, 142 S.Ct. 2587, 2607, 213 L.Ed.2d 896 (2022), quoting *Parents Involved in Community Schools v. Seattle School Dist. No. 1*, 551 U.S. 701, 719, 127 S.Ct. 2738, 168 L.Ed.2d 508 (2007) ("'[V]oluntary cessation does not moot a case' unless it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'").  Further, appellants argue that dismissal under Civ.R. 12(B)(6) is improper because whether BGSU will reimpose the challenged mandates is a fact issue which requires consideration of matters outside the pleadings.

{¶ 15} As to the latter argument, "[c]ourts generally may not rely on evidence or allegations outside the complaint when reviewing a lower court's dismissal under Civ.R. 12(B)(6), although there are narrow exceptions."  *State ex rel. Ames v. Summit Cty. Court of Common Pleas*, 159 Ohio St.3d 47, 2020-Ohio-354, 146 N.E.3d 573, ¶ 5.  "One exception is that 'an event that causes a case to be moot may be proved by extrinsic evidence outside the record.'"  *Id.*, quoting *State ex rel. Nelson v. Russo*, 89 Ohio St.3d 227, 228, 729 N.E.2d 1181 (2000).  Here, that includes Exhibit A to BGSU's reply in support of its motion to dismiss appellants' complaint, which is a published announcement from BGSU Division of Health and Wellness stating that the mask, vaccine, and testing mandates are no longer in effect.  In addition, "an appellate court can sua sponte take judicial notice of 'facts capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned,' which include 'public

7.

records and government documents available from reliable sources on the internet.'"

*Park Lane Apts. v. Parks*, 6th Dist. Lucas No. L-20-1208, 2021-Ohio-3510, ¶ 3, quoting

*Darr v. Livingston*, 2017-Ohio-841, 85 N.E.3d 1260, ¶ 16 (10th Dist.).

{¶ 16} As to the former argument, there is no reasonable expectation that the mandates will be reimposed. Several federal circuit courts have examined this issue and reached the same conclusion. In *Resurrection School v. Hertel*, 35 F.4th 524 (6th Cir.2022), the plaintiffs challenged the constitutionality of Michigan's mask mandate. On appeal, the Sixth Circuit held that the state's recission of its mandate rendered the appeal moot and the voluntary cessation exception to the mootness doctrine did not apply. *Id.* at 528-529. The Sixth Circuit reasoned that the state rescinded its mandate not in response to the lawsuit, but in response to high vaccination rates, low case counts, new treatment options, and warmer weather. *Id.* at 529. In addition, the court noted that the relevant circumstances had changed dramatically from when the state imposed its mandate. *Id.* Finally, the court reasoned that any future order would likely not present substantially the same legal controversy as the one originally presented. *Id. See also, e.g., Clark v. Governor of New Jersey*, 53 F.4th 769, 778 (3d Cir.2022) (voluntary cessation exception does not apply where "knowledge of the virus and its vectors of transmission, the rollout of vaccines, and the availability of therapeutic responses to infection have totally changed the nature of the disease itself, our understanding of it, and

8.

our response to it"); *Eden, LLC v. Justice*, 36 F.4th 166 (4th Cir.2022); *Health Freedom Defense Fund v. President of United States*, 71 F.4th 888 (11th Cir.2023).

{¶ 17} Here, as in *Resurrection School* and the others, there is no indication that BGSU rescinded its mandates in response to the present litigation. Instead, BGSU cited high vaccination rates, significant improvements in treatments, low case numbers, and changes in the variants that have resulted in less hospitalizations and deaths. Indeed, the federal Covid-19 Public Health Emergency declaration ended on May 11, 2023, and conditions today are far different than they were in the fall of 2021 when the mandates were imposed. *See* Centers for Disease Control and Prevention, *End of Public Health Emergency* (updated May 5, 2023), www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html (accessed Sept. 7, 2023). Thus, it cannot reasonably be expected that BGSU would impose substantially similar mandates in response to a future Covid-19 epidemic.

{¶ 18} Therefore, appellants' claims are moot and the trial court did not err when it dismissed the complaint.

{¶ 19} Accordingly, appellants' second assignment of error is not well-taken.

{¶ 20} Further, because the trial court correctly dismissed appellants' complaint as moot, appellants' first and third assignments of error, which challenge the trial court's alternative justifications for dismissing the complaint, are likewise moot and are not well-taken.

9.

## IV. Conclusion

{¶ 21} For the foregoing reasons, the judgment of the Wood County Court of Common Pleas is affirmed.  Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.

Charles E. Sulek, J.
CONCUR.

_____
JUDGE

_____
JUDGE

Thomas J. Osowik, J.
CONCURS AND WRITES
SEPARATELY.

_____
JUDGE

**OSOWIK, J.**

{¶ 22} I concur with the majority in the judgment to affirm the decision of the Wood County Court of Common Pleas.  However, in my opinion, without standing, the appellants are not able to even access the on-ramp to the highway of justiciable controversy before being escorted off the mootness exit.

**{¶ 23}** Standing versus mootness. It is a ghostly colloquy that has bounced around the craniums of American legal scholars for generations. And so it continues. Horse before the cart. Chicken before the egg. More appropriately, how does a chicken cross the road to the cage-free pastures of litigation without a leg to stand on?

**{¶ 24}** In general, standing determines "whether a litigant is entitled to have a court determine the merits of the issues presented." *Ohio Contrs. Assn. v. Bicking*, 71 Ohio St.3d 318, 320, 643 N.E.2d 1088 (1994). "Whether a party has established standing to bring an action before the court is a question of law." *Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E .2d 977, ¶ 20, citing *Cuyahoga Cty. Bd. of Commrs. v. State,* 112 Ohio St.3d 59, 2006-Ohio-6499, 858 N.E.2d 330, ¶ 23.

**{¶ 25}** In order to establish standing, the appellants must show that he or she suffered (1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct, and (3) likely to be redressed by the requested relief. *Id.* at ¶ 22, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992*). Papps v. Karras,* 6th Dist. Lucas No. L-14-1246, 2015-Ohio-1055, ¶ 10.

**{¶ 26}** On the face of the pleadings alone, none of the appellants herein have admittedly suffered an injury, let alone any detriment fairly traceable to any conduct of BGSU.

**{¶ 27}** The asserted injury must be both concrete and particularized and actual or imminent, not conjectural or hypothetical. *Id.* A plaintiff must demonstrate standing

11.

separately for each form of relief sought. *Parvati Corp. v. City of Oak Forest, Ill.*, 630 F.3d 512, 516 (7th Cir.2010), citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 185, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).

{¶ 28} The underlying issue to this appeal is whether four students and employees of Bowling Green State University ("BGSU"), a state university with the main campus located in Wood County, Ohio, have standing to seek a declaratory judgment opposing BGSU's temporary COVID-19 pandemic-related vaccine, testing, and mask-wearing policies for in-person activities. The trial court determined the plaintiffs did not have standing to seek declaratory relief, from which judgment the plaintiffs now appeal.

{¶ 29} On March 28, 2022, plaintiffs-appellants Andrea Hoerig, Carolyn Dailey, Gabrielle Downard, and Amy Vorst (hereafter, "appellants"), filed an amended complaint[1] against defendants-appellees BGSU and its 12 individually-named board of trustees (hereafter "appellees") for two causes of action: (1) declaratory relief for exceeding authority under R.C. 3341.02, 3345.021 and 3709.212, for violating the right to refuse medical treatment under the Ohio Constitution Article I, Section 1, for violating R.C. 2905.12(A)(5) by coercing medical treatments, and for violating R.C. 3792.04(B) by requiring non-FDA-approved vaccines; and (2) injunctive relief from appellees' enforcement of policy No. 3341-1-11 and "specific health requirements" promulgated under that policy.

---

[1] Appellants' original complaint was subject to appellees' Civ.R. 12(B)(6) motion to dismiss, which the trial court granted without prejudice on February 28, 2022.

12.

{¶ 30} Appellants allege they are students and/or employees of BGSU who oppose appellees' COVID-19 vaccine, testing, and mask-wearing policies, which they label "the Mandate." They allege "the Mandate" was issued on September 2, 2021, under BGSU policy No. 3341-1-11, and is set forth in exhibit Nos. A through K attached to their amended complaint. It seems that we may reasonably infer that as of the filing, Hoerig and Dailey were still employed by BGSU, and Dailey, Downard, and Vorst were still enrolled students due to the lack of any contrary allegation in the amended complaint.

{¶ 31} BGSU policy No. 3341-11-11 is exhibit No. L of the amended complaint. The five-paragraph document is dated July 30, 2020, and is entitled, "3341-11-11 Community Health Requirements." The BGSU policy administrator for policy No. 3341-1-11 is the chief health officer. The scope of the policy, which does not mention COVID-19, "applies to all faculty, staff, students, and visitors of the university while present at any university location or function." In addition, "Each person within the BGSU community must comply with all specific health requirements promulgated under this policy. Failure to comply with this policy and established requirements may result in disciplinary action under the Code of Student Conduct or the applicable employee discipline process. Visitors failing to comply with the policy may be prohibited from remaining on or returning to campus."

{¶ 32} Appellants make relevant admissions regarding their lack of standing to seek declaratory relief. As of the filing of the amended complaint, each appellant

13.

successfully avoided "the Mandate" by either receiving exemptions from "the Mandate," or in Hoerig's case simply not complying with the vaccine policy. In any event, appellants are unvaccinated and either remained employed by BGSU or remained enrolled students, and they fail to allege appellees actually forced them to take a COVID-19 vaccine, to wear face masks, or to submit to testing.

**COVID-19 Vaccine Policy**

{¶ 33} Appellants admit that Hoerig, a BGSU faculty member, is not vaccinated, has not received an exemption, and has "natural immunity" because she has "recovered" from COVID-19. The amended complaint's exhibit No. C is a series of screen-shots dated September 25, 2021, and entitled, "Request for Exemption from COVID-19 Vaccine." The exhibit shows Hoerig as the requestor with her name and email, but no other requested information completed, such as identifying one of three reasons for the exemption: a medical condition, a sincerely held religious belief, or a sincerely held reason of personal conscience. Hoerig did not submit the exemption request. Despite being unvaccinated and failing to seek an exemption, Hoerig does not allege appellees forced her to take the COVID-19 vaccine, and she remains employed by appellees.

{¶ 34} Appellants admit that Dailey, a student and resident advisor employee, received a vaccine exemption, and, like Hoerig, has "recovered" from COVID-19 and has "natural immunity." Like Hoerig, Dailey does not allege appellees forced her to take the COVID-19 vaccine, and she remains both an employee and student.

14.

**{¶ 35}** Appellants admit that Downard and Vorst are students who "have received exemptions." Downard and Vorst do not allege appellees forced them to take the COVID-19 vaccine, and they remain enrolled students.

### Face-Masking Policy

**{¶ 36}** Appellants allege they are subject to unlawful face-masking conditions which violate their constitutional right to refuse "medical treatment."[2] However, there is no allegation any appellant was actually forced by appellees to wear a face mask.

**{¶ 37}** Appellants admit that Hoerig applied for and received from appellee an "approved medical exemption" from face-mask wearing on September 23, 2020. Hoerig also applied for and received on October 22, 2021, "an accommodation requiring her to not be physically present on campus until the mask mandate was removed despite the fact that she was not diagnosed with Covid-19 and regardless of her natural immunity from same." Meanwhile, on August 24, "Hoerig received a verbal reprimand from her supervisor for not attending the [August 23] meeting and for violating Policy 3341-1-11."

---

[2] If we were to assume standing to reach the merits of appellants' claim that mask-wearing is "medical treatment," appellants' allegation is contradicted by exhibit Nos. F and K, which are identical documents from the Centers for Disease Control and Prevention entitled, "Types of Masks and Respirators" dated September 23, 2021, and January 28, 2022, respectively, where the phrase "medical treatment" is absent to describe mask wearing. "Medical treatment" is also absent from exhibit No. J from February 25, 2022, the CDC entitled, "Use and Care of Masks." Appellants also allege three websites show mask-wearing is a form of "medical treatment." Of the two websites the court accessed without receiving an error message, the documents are from the Food and Drug Administration addressed to manufacturers of face masks and health care personnel and purchasing departments, and nowhere is mask-wearing identified as a "medical treatment."

15.

Then on August 26 and November 15, appellants allege Hoerig received written reprimands for violating policy No. 3341-1-11 "and related events." Despite the foregoing, Hoerig remains employed.

{¶ 38} Appellants allege that Dailey's "resident advisor supervisor told her on a number of occasions that if she did not wear a mask, disciplinary action would be taken despite the fact that Dailey was not diagnosed with Covid-19 and regardless of her natural immunity from same." Despite the foregoing, Dailey remains employed.

{¶ 39} It can be inferred from appellants' broad admission that Downard and Vorst received "exemptions" such that the exemptions include the face-masking policy. Downard and Vorst, along with Dailey, remain enrolled students.

### COVID-19 Testing Policy

{¶ 40} Appellants generally refer to the COVID-19 testing policy as part of the unconstitutional "exemption conditions." Again, there is no allegation that any appellant was actually forced by appellees to be tested for COVID-19 and quarantined after a positive test result.

{¶ 41} Exhibit No. G, a February 8, 2022 document entitled, "COVID-19 University Protocols," indicates appellants were not forced to test and quarantine, and the vaccinated and unvaccinated were treated the same. The exhibit states COVID-19 guidelines and protocols on BGSU campuses for face coverings, physical distancing, vaccines, positive test results, and isolation and quarantine periods. Appellee did not

16.

sanction anyone, including the unvaccinated, for failing to quarantine for five days after receiving a positive COVID-19 test result because it allowed the alternative of wearing a well-fitting face covering when around others for ten days after exposure. In addition, the exhibit recommends for infected individuals, "Regardless of vaccination status, you should: stay home for 5 days; if you have no symptoms ore your symptoms are resolving after 5 days, you can leave your house; continue to wear a face covering around others for 5 additional days; and of you have a fever, continue to stay home until you are fever free for 24 hours without the use of fever reducing medicines." Finally, we know from the amended complaint that BGSU's face-making policy offers waivers, and all appellants obtained them.

{¶ 42} The First District Court of Appeals recently evaluated an identical claim of standing to seek declaratory relief. In an amended complaint by students of the University of Cincinnati, four students alleged the university lacked authority to order COVID-19 vaccination, masking, or testing policies as preventive health measures because such policies exceeded the general authority to administer the university. *Lipp v. Univ. of Cincinnati,* 1st Dist. Hamilton No. C-220312, 2023-Ohio-1224, ¶ 23.

{¶ 43} In turn, the *Lipp* court reviewed the decision by the Twelfth District Court of Appeals presented with identical claims by three employees of Miami University. *Id.* at ¶ 25-31, citing *Siliko v. Miami Univ.*, 12th Dist. Butler No. CA2021-12-162, 2022-Ohio-4133, *appeal not allowed,* 169 Ohio St.3d 1459, 2023-Ohio-758, 204 N.E.3d 568.

The *Lipp* court determined the students lacked standing because their amended complaint did not contain facts establishing the four students suffered either an injury-in-fact or the significant possibility of future harm, such as being forced on-campus, forced to take a COVID-19 vaccine, or forced to submit to testing. *Id.* at ¶ 29. The *Lipp* court joined with the *Siliko* court to further conclude, "Like Miami, the University is not a board of health or general health district or department and thus does not fall within the purview of R.C. 3909.212. By definition, the students cannot suffer injury under a statute aimed at controlling the conduct of an agency other than the defendant in the case." *Id.* at ¶ 30, citing *Siliko* at ¶ 42-44.

{¶ 44} Appellants fail to allege facts establishing they suffered either an injury-in-fact or the significant possibility of future harm because appellees violated R.C. 3341.02, 3345.021, and R.C. 3709.212.

{¶ 45} I would agree with the reasoning by the First and Twelfth District Courts of Appeals and find that appellants lack standing under their amended complaint to seek declaratory relief for appellees allegedly violating R.C. 3341.02, 3345.021, and R.C. 3709.212.

**Violating the Right to Refuse Medical Treatment Under the Ohio Constitution Article I, Section 1**

{¶ 46} Appellants also contend that they have standing to assert their rights to bodily integrity and autonomy under the Ohio Constitution by refusing medical treatment, citing *Steele v. Hamilton Cty. Community Mental Health Bd.*, 90 Ohio St.3d

18.

176, 180, 736 N.E.2d 10 (2000). Appellants allege in their amended complaint "The Mandate's requirement to wear masks is also a form of medical treatment."

{¶ 47} Appellants admit that all four have sought and received face-masking exemptions. Even if we accept as true, despite contradictions in the amended complaint, their argument that the face-masking policy constitutes "medical treatment" that they have the constitutional right to refuse, the undisputed facts of their exemptions demonstrate that appellee did not deny them their rights to refuse "medical treatment."

{¶ 48} Once again, the First District Court of Appeals evaluated identical claims by students of the University of Cincinnati. *Lipp* at ¶ 32. In turn, the *Lipp* court reviewed the *Siliko* court's analysis of identical claims by employees of Miami University. *Id.* at ¶ 33-37. Both the First and Twelfth District Courts of Appeals determined the "granting of the exemptions resulted in the lack of a justiciable controversy between the parties." *Id.* at ¶ 33, citing *Siliko* at ¶ 31-32. Specifically, the *Lipp* court found no injury exists where the students fail to allege the university forced them to receive the COVID-19 vaccine or forced them to wear masks against their wills or denied them exemptions. *Id.* at ¶ 34-37. "Because the students pleaded no facts from which we can discern an injury as to the vaccination and masking requirements, the trial court did not err in finding that the students lacked standing under both the common law and the Declaratory Judgment Act to assert a claim for a violation of their right to refuse medical treatment." *Id.* at ¶ 37.

19.

{¶ 49} The *Siliko* court specifically reviewed those appellants' reliance on *Steele*, which did not prevail. *Siliko* at ¶ 22-23. Identical to our case, those appellants had either applied for and received vaccine exemptions or refused to apply for an exemption and, therefore, were not denied exemptions. *Id.* at ¶ 26-32. Also similar to our case, the *Siliko* court determined those appellants lacked standing to seeking declaratory relief from the restrictions imposed by the challenged policies where they failed to submit to the reasonable procedural requirements of them that offered multiple avenues for exemption or other relief. *Id.* at ¶ 32.

{¶ 50} I would also agree with the reasoning by the First and Twelfth District Courts of Appeals and find that appellants lack standing under their amended complaint to seek declaratory relief for appellees allegedly denying appellants' rights to refuse "medical treatment."

## Violating R.C. 2905.12(A)(5) by Coercing Medical Treatments

{¶ 51} Appellants next argue they have standing to seek civil damages under R.C. 2307.60(A)(1) for appellees' violation of R.C. 2905.12(A)(5). Appellants allege in their amended complaint that appellees violated R.C. 2905.12(A)(5), because the "Mandate involves taking or withholding official action to coerce plaintiffs to accept medical treatment, including taking Covid-19 vaccines and using masks for a medical purpose, which plaintiffs have the legal freedom to refuse under Article 1, Section 1, of the Ohio Constitution." Appellants allege appellees coerced them through threatened suspension,

20.

expulsion, discipline, and/or termination for noncompliance with "the Mandate." Ohio Constitution, Article I, Section 1 states, "All men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety."

{¶ 52} Appellants invoke R.C. 2307.60(A)(1), which states, "Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law * * *." In turn, R.C. 2905.12(A)(5) states, "No person, with purpose to coerce another into taking or refraining from action concerning which the other person has a legal freedom of choice, shall do any of the following: * * * (5) Take, withhold, or threaten to take or withhold official action, or cause or threaten to cause official action to be taken or withheld."

{¶ 53} R.C. 2307.60(A)(1) authorizes a civil action for damages by any person injured by a criminal act, unless otherwise excepted by law. *Jacobson*, 149 Ohio St.3d 398, 2016-Ohio-8434, 75 N.E.3d 203, at ¶ 10. However, *Jacobson* gave no guidance "regarding how the statute operates or what a plaintiff must do to prove a claim under R.C. 2307.60(A)(1)[.]" *Id.* at ¶ 11. Since then, the Ohio Supreme Court clarified that a plaintiff is not required to show "proof of an underlying criminal conviction" to support the plaintiff's claim for civil liability under R.C. 2307.60. *Buddenberg v. Weisdack*, 161 Ohio St.3d 160, 2020-Ohio-3832, 161 N.E.3d 603, ¶ 6 and 11. Nevertheless, regardless

of the absence of an underlying conviction, the elements for the alleged criminal offense of coercion must be established by appellants. *See Id.* ¶ 15-21; *Med. Mut. of Ohio v. FrontPath Health Coalition*, 2023-Ohio-243, 207 N.E.3d 16, ¶ 23 (6th Dist.).

{¶ 54} A necessary element of the R.C. 2905.12(A)(5) offense appellants must allege is that appellees acted with purpose to coerce. "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A).

{¶ 55} The *Lipp* and *Siliko* courts were not faced with identical claims as ours because those appellants only invoked R.C. 2905.12(A)(5) without also invoking R.C. 2307.60(A)(1). The First District Court of Appeals determined those appellants lacked standing for failure to allege injuries from the alleged coercion and for failure to allege they were actually forced by appellees to take the COVID-19 vaccine, wear masks, and submit to testing. *Lipp*, 1st Dist. Hamilton No. C-220312, 2023-Ohio-1224, at ¶ 38-44. The Twelfth District Court of Appeals determined those appellants lacked standing because R.C. 2905.12 did not create a private right of action. *Siliko*, 12th Dist. Butler No. CA2021-12-162, 2022-Ohio-4133, at ¶ 35-39.

{¶ 56} In our case, after all uncontroverted factual allegations of the amended complaint are presumed true and all reasonable inferences are made in appellants' favor,

22.

appellants' idealistic opposition to "the Mandate" does not withstand Civ.R. 12(B)(6) review.

{¶ 57} Appellants fail to allege they were injured and that appellees acted with purpose to coerce causing injury to appellants resulting in damages. Each appellant successfully avoided "the Mandate" prior to appellees rescinding it. Appellants admit they either received exemptions from "the Mandate," or in Hoerig's case simply did not comply with the vaccine policy. Appellants fail to allege appellees actually forced them to take a COVID-19 vaccinate, to wear face masks, or to submit to testing. Despite labeling "the Mandate" as coercion and Hoerig alleging a "dilemma" of complying or face serious sanctions, appellants are unvaccinated and either remain employed by BGSU or remain enrolled students.

{¶ 58} Appellants fail to allege facts establishing they were damaged pursuant to R.C. 2307.60(A)(1) and suffered either an injury-in-fact or the significant possibility of future harm because appellees violated R.C. 2905.12(A)(5). Appellants lack standing under their amended complaint to seek declaratory relief for allegedly violating R.C. 2905.12(A)(5).

**Violating R.C. 3792.04(B) by Requiring Non-FDA-Approved Vaccines**

{¶ 59} Finally, appellants argue they have standing under R.C. 3792.04(B) because, "as unvaccinated individuals, [they] are being required to engage in activities or

23.

precautions (testing and quarantine/isolation) that differ from those who have received non-FDA approved vaccines."

{¶ 60} R.C. 3792.04(B) has two parts and states:

Notwithstanding any conflicting provision of the Revised Code, a public school or state institution of higher education shall not do either of the following: (1) Require an individual to receive a vaccine for which the United States food and drug administration has not granted full approval; (2) Discriminate against an individual who has not received a vaccine described in division (B)(1) of this section, including by requiring the individual to engage in or refrain from engaging in activities or precautions that differ from the activities or precautions of an individual who has received such a vaccine.

{¶ 61} Looking to the amended complaint, appellants allege that R.C. 3792.04(B)(1) is violated by "the Mandate" because, while Comirnaty and Spikevax are the only fully FDA-approved COVID-19 vaccines, they are unavailable. They allege that the Johnson & Johnson, Moderna, and Pfizer vaccines, while available, are not fully FDA-approved and conclude that "those who have been vaccinated to date have used non-FDA-approved vaccines[.]"[3]

---

[3] If we were to assume standing to reach the merits of appellants' claim that "the Mandate" illegally offers only three non-FDA-approved COVID-19 vaccines, appellants' allegation is partially contradicted by the amended complaint's exhibit No. A, dated September 2, 2021, regarding BGSU COVID-19 vaccination and exemption plans,

24.

**{¶ 62}** Appellants then allege that R.C. 3792.04(B)(2) is violated by "the Mandate" because appellants, who are unvaccinated, are discriminated against in two ways: (1) to participate in regular Covid-19 testing while those vaccinated with non-FDA approved vaccines are not required to do so; and (2) if they test positive for COVID-19, they must quarantine for five days "but only isolate or wear masks" if vaccinated with a non-FDA approved vaccine.[4]

**{¶ 63}** Once again, the First District Court of Appeals evaluated identical claims by students of the University of Cincinnati before concluding those appellants lacked standing for alleged R.C. 3792.04(B) violations because of the lack of injury. *Lipp* 1st Dist. Hamilton No. C-220312, 2023-Ohio-1224, at ¶ 46-53.

**{¶ 64}** The Twelfth District Court of Appeals evaluated nearly identical claims by employees of Miami University. *Siliko*, 12th Dist. Butler No. CA2021-12-162, 2022-Ohio-4133, ¶ 45-53. While the *Siliko* court found those appellants lacked standing for alleged R.C. 3792.04(B)(1) violations because of the lack of injury, the court found those appellants had standing for alleged R.C. 3792.04(B)(2) violations because of the allegations that in order to obtain an exemption, the employees had to sign a liability

_____

stating within, "With the recent U.S. Food and Drug Administration [FDA] full approval of the Pfizer-BioNTech COVID-19 vaccine for ages 16 and over * * *." The contradiction is repeated in exhibit No. B from November 19.

[4] If we were to assume standing to reach the merits of appellants' R.C. 3792.04(B)(2) claim, they are contradicted by exhibit Nos. A, B, and G.

25.

release and because of the university's implementation of a bonus program available only to vaccinated employees. *Id.*

{¶ 65} Similar to the First District, but distinct from the Twelfth District, there are no allegations in the amended complaint before us regarding appellees' vaccine policy that participation in a bonus program rewarded the vaccinated while excluding the unvaccinated, or that those seeking a vaccine exemption must sign a liability waiver, while preserving liability claims for the vaccinated, and appellants are not discriminated against by appellees pursuant to R.C. 3792.04(B)(2). *Lipp* at ¶ 50.

{¶ 66} Upon a de novo review of the amended complaint, appellants fail to allege facts establishing they suffered either an injury-in-fact or the significant possibility of future harm for violating R.C. 3792.04(B).

{¶ 67} Again, I agree with the reasoning by the First and Twelfth District Courts of Appeals and find that appellants lack standing under their amended complaint to seek declaratory relief from appellees for allegedly violating R.C. 3792.04(B)(1), and I agree with the reasoning by the First District Court of Appeals and find that appellants lack standing under their amended complaint to seek declaratory relief for appellees allegedly violating R.C. 3792.04(B)(2).

{¶ 68} In summary, I would find the appellants' first assignment of error to be without merit and affirm the judgment of the Wood County Court of Common Pleas.

26.

## Remaining Assignments of Error

{¶ 69} When a party with standing at the inception of the litigation loses it due to intervening events, the inquiry is really one of mootness. *Parvati Corp.*, 630 F.3d at 516, citing *Friends of the Earth*, 528 U.S. at 189, 120 S.Ct. 693, 145 L.E.2d 610. Mootness is "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Id.*

{¶ 70} It is my opinion that since none of the appellants herein had standing at the inception of this litigation, we need not reach the remaining assignments of error. I would therefore find the remaining assignments themselves moot requiring no further examination.

27.